H. C. Champlin *v.* Wm. F. Smith, Appellant.

164  481
192  308

*Contracts—Wagering contracts—Broker—Lex loci contractus—Opening judgment—Practice, C. P.*

On a rule to open a judgment entered upon a note given by defendant to a broker in Chicago to secure the broker in purchases and sales for defendant in the Chicago Board of Trade, the court found as a fact that the contract of the broker with those from whom he bought, under the rules of the board, was such that the delivery of the goods was contemplated, and could have been demanded when the time for delivery arrived; that for his purchases and sales he made daily settlements in accordance with the rules of the board, and that the reason why no grain was ever actually delivered was that defendant ordered him to sell it before the time of delivery came around. *Held,* that, under the laws of Illinois, the contract between the broker and defendant was not a wagering contract, and that defendant was not entitled to have the judgment opened:

*Confession of judgment—Warrant—Practice, C. P.*

A note payable to order with a warrant of attorney to confess judgment " in favor of the holder of the note," will warrant a confession in favor of a subsequent holder.

Argued Oct. 15, 1894. Appeal, No. 15, Oct. T., 1894, by defendant, from order of C. P. Washington Co., Aug. T., 1887, No. 51, discharging rule to open judgment. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. · Affirmed.

Rule to open judgment.

The following opinion was filed by McILVAINE, P. J.:

" UNDISPUTED FACTS.

" (*a*) William F. Smith, the petitioner, at the beginning of this controversy, was a resident of Greene county, Pennsylvania. F. G. Kammerer was a resident of Chicago, Ill., a member of the Board of Trade, and as such bought and sold grain and pork on commission. He did business in the name of F. G. Kammerer & Co. These parties were not personally acquainted. In January, 1886, William F. Smith wrote to F. G. Kammerer & Co., about trading on the Board of Trade, and in his letter inclosed a note of introduction from J. C. Smith, an acquaintance of F. G. Kammerer, who lived at McKeesport, Pa. On January 19, 1886, after a letter and a telegram or two had

passed between the parties as to the state of the market, Wm. F. Smith sent to F. G. Kammerer the following letter :

"'DEAR SIR :

"'Yours of the 14th received ; also telegram in reference to May wheat and pork. I inclose you draft on N. Y. from my bank at Waynesburg, Pa., which you may place to my account. If you have not bought as advised by telegram, buy me five thousand (5000) bushels May wheat at 84 cts, and as much below as you can, and hold until I advise you to sell. You have a good fat margin to hold on. Will put up more if necessary, don't sell at a loss but advise me by telegram. I will go to Boston to-morrow. You telegraph there. Yours truly,

"'WM. SMITH.

"'P. S.—Draft is for ($1,000) one thousand. WM. SMITH.'

"F. G. Kammerer bought the 5000 bushels of wheat as directed, and for about fourteen months continued to act as Mr. Smith's broker on the Board of Trade; sometimes he bought and sold on orders received from Mr. Smith by wire, and at other times on orders received from him in person, as he spent part of the time in Chicago. I give a few of the telegrams, taken at random, from the large number of exhibits returned by the examiner :

"'Jan. 20, 1886.

"'If May wheat is lower buy five thousand bushels. Wire.'

"'Feb. 1, 1886.

"'Will be in Chicago on Thursday. If I do anything before I come will wire you. Buy the five thousand wired you on the 29th at 85.'

"'Feb. 2, 1886.

"'Buy twenty-five thousand May corn at forty ; will be there Thursday. Answer, Benwood, W. Va., Price.'

"During the fourteen months, F. G. Kammerer & Co. bought and sold, on the orders of Wm. F. Smith, 1,370,000 bushels of wheat, 25,000 bushels of corn and 12,000 barrels of pork, worth about one and a quarter million dollars. He received from time to time, including the note in question, less than $13,000 to pay commissions and losses on sales, and paid him less than this sum at different times on gains on sales. No other money or valuable consideration passed between them on account of

the purchases and sales of this wheat, corn and pork. None of the wheat, corn or pork bought was ever delivered to Smith, and he never delivered any to those who purchased. The amount of wheat, corn and pork bought by Kammerer & Co. for Smith equalled the amount sold by him for Smith, and Smith was credited with the gains on sales and charged with the loss on sales. The accounts rendered were in the following form: I give two, taken at random from the exhibits returned by the examiner:

"'Account purchase and sale of 40,000 wheat by F. G. Kammerer & Co., Chicago, for account and risk of Wm. F. Smith, Waynesburg, Pa.

No. 5830.

| | | | | |
|---|---|---|---|---|
| Feb'y 8, Sold 40 M. May wheat, 85¼ | | | | $34,100.00 |
| Contra. | | | | |
| Jan'y 9, Bot 5 M. May wheat 82⅞ | | | 4143.75 | |
| " 21, " 5 " " " 84 | | | 4200 | |
| Febry 3, " 5 " " " 85 | | | 4250 | |
| " 5, " 25 " " " 83⅞ | | | 20958.75 | 33,562.50 |
| | | Gain | | 537.50 |
| | | Coms. | | 50.00 |
| | | Net gain | | $487.50 |

E. & O. E.          Chicago, Feb. 8, 1886.'

"'Account purchase and sale of 25,000 bushels of wheat by F. G. Kammerer & Co., Chicago, for Account and Risk of Wm. F. Smith, Waynesburg, Pa.

No. 6206.

| | | |
|---|---|---|
| June 21, Bot 25 M. Aug. wheat 75⅜ | | $18,843.75 |
| Contra. | | |
| " " Sold 25 M. Aug. wheat 75⅛ | | 18,781.25 |
| | Loss | 62.50 |
| | Com's | 31.25 |
| | Net loss | 93.75 |

E. & O. E.          Chicago, June 21, 1886.'

"In buying and selling this wheat, corn and pork, F. G. Kammerer & Co. dealt with other members of the Board of Trade,

and their accounts were kept and settled daily in accordance with the rules and regulations of the board. Smith was not a party to the settlements Kammerer made of his purchases and sales from and to other brokers, and Smith did not know from whom the purchases were made, or to whom the sales were made. On the board Kammerer dealt in his own name, and each day made settlements through the Board of Trade clearing house. Sec. 1 of rule 14 of the Board of Trade provides as follows: 'A member of the association may act as a broker only between other members. A broker shall reveal the name of his principal when a transaction is made, if demanded, otherwise he may not be considered and treated as a broker but as a principal.'

" (*b*) On Oct. 6, 1886, Wm. F. Smith was behind in his account with Kammerer & Co. $2,700; that is, to keep his margin up to what was required by the rules of the board he needed $2,700 to save the November wheat he then had from being sold. To pay this $2,700, and to provide a margin for future deals, F. G. Kammerer & Co. took from Wm. F. Smith a note for $6,500, at 60 days, payable to F. G. Kammerer & Co., with warrant of attorney authorizing the confession of judgment for that sum by an attorney in any court of record, in favor of the holder of the note. At the same time, and to secure the payment of this note, he took from Wm. F. Smith an assignment, first, of a mortgage given by Wm. Lippencott on a tract of land in Greene county, Pennsylvania, and ten accompanying notes for about $4,500; second, of a judgment note of Adamson and Hoge for $2,100. The proceeds of this $6,500 note was credited to Smith's account. On Feb. 2, 1887, he paid $500 on the note, and on Feb. 10, 1887, he paid $1,000. On or about March 1, 1887, he stopped dealing with F. G. Kammerer & Co., and they had a final settlement and adjustment of their accounts, which showed that F. G. Kammerer & Co. owed Smith $487.50; this amount was, on March 8, 1887, credited on the $6,500 note to which we have referred.

" (*c*) On May 16, 1887, J. F. McFarland, Esq., a member of our bar, as attorney for Wm. F. Smith, to No. 51 Aug. Term 1887, of this court, confessed judgment against him and in favor of H. C. Champlin for the sum of $4,957.55, the balance shown to be due and unpaid on this $6,500 note,—H. C. Champlin claiming to be 'the holder of the note.' Judgment was also entered

on July 21, 1887, in this court to No. 296 Aug. Term, 1887, on the Adamson and Hoge note for $2,100 and accrued interest, less the credits.   The mortgage of Wm. Lippencott and assignment thereof were duly recorded in Greene county, Pennsylvania, and on Aug. 2, 1887, a scire facias was issued out of the court of common pleas of that county to foreclose it.

"On June 1, 1887, Wm. F. Smith filed his petition in this court and the rule we are now considering was issued.

"On Sept. 3, 1887, Wm. F. Smith filed his bill in the court of common pleas of Greene county, sitting in equity, against F. G. Kammerer et al., for the purpose of having the assignment of the Wm. Lippencott mortgage and notes and the assignment of the Adamson & Hoge $2,100 note and the $6,500 note, given by him on Oct. 6, 1886, to F. G. Kammerer & Co. canceled, on the ground that the assignments and note were given in a gambling contract, and were therefore void.

"All proceedings, at the request of the parties, on the present rule, were suspended until the Greene county equity case should be finally determined, it being agreed that the testimony taken in the equity case could be used on the hearing of this rule.

"The master in the equity case recommended the dismissal of the plaintiff's bill for the reason that the court had no jurisdiction of the Illinois parties, who appeared de bene esse, nor of the judgments in Washington county, and that Wm. F. Smith, being in pari delicto with F. G. Kammerer (if the note and assignments were given in a grain gambling transaction), and the contract, so far as the assignment of the mortgage was concerned, being executed, had no standing in a court of equity.   The court concurred in the recommendation of the master, and decreed the dismissal of the bill.   On appeal the Supreme Court affirmed this decree : Smith v. Kammerer, 152 Pa. 98.

## "DISPUTED FACTS.

"Wm. F. Smith was examined in his own behalf and testified that he had a contract with Kammerer that he was to trade on margins and was not to take 'the stuff itself ;' that he told him that he did not want to receive or handle any grain, but wished to deal in the differences, the fluctuations of the market, to buy 'risks and margins ;' that Kammerer said he would fix that, and that that was the proper way to speculate.   He says that he 'told

Kammerer that he did not have enough of money to pay for any quantity of wheat but that he would put up money as margins only.' He says this is the contract he had with Kammerer.

F. G. Kammerer was examined and positively denied such a contract. He says that he, as Smith's agent, bought wheat, corn and pork on the Board of Trade, as Smith ordered it bought, that his contract with those from whom he bought, under the rules of the board, was such that the delivery of every bushel and barrel of it was contemplated and could have been demanded when the time for delivery arrived; that all his purchases were for future delivery and that there was no option in the contracts he made except that relating to the time of delivery;—for instance, the seller of May wheat had all the month of May in which to deliver it. He said, further, that it is true that no wheat was ever actually delivered, on his purchases, to Smith, because Smith ordered him to sell it before the time of delivery came around. He says that for his purchases and sales he made daily settlements in accordance with the rules of the board, and that none of his transactions on behalf of Smith were in violation of the statutes of Illinois. He testified further that Smith had been furnished a printed copy of the rules and regulations of the Board of Trade and was familiar with the manner of doing business under these rules; that, before the note in question was given, he had been present when some of his deals were made, and gave personal direction in regard to the same; that he knew of the right of brokers to make daily settlement by setting off their purchases against sales and accounting for the differences.

" [A number of attorneys and business men of Chicago testified that under Kammerer's statement of the character of his deals for and with Smith, there was no violation of the rules of the board or the law of Illinois. [8]

### "CLAIM OF THE PARTIES.

" (*a*) The petitioner claims (1) that this judgment in controversy should be stricken from the records for the reason that it is entered in favor of H. C. Champlin when the note is payable to F. G. Kammerer & Co. (2) That the note in question was given to pay Smith's losses in a gambling contract, which was against public morals and in violation of the statutes of Illinois.

"(*b*) The respondent claims (1) that the Board of Trade is incorporated under the law of Illinois, that its rules and regulations are in conformity thereto and that his dealings with Smith were bona fide purchases and sales as his agent, of wheat, corn and pork, for future delivery; (2) that the question here in controversy is res adjudicata, and (3) that the petitioner cannot successfully invoke the aid of a court of equity by setting up an illegal act to which he was a party.

## "CONCLUSION ON THE FACTS AND THE LAW.

" [We are of the opinion, and so find, that the deals and settlements made by F. G. Kammerer & Co. (under the orders of Wm. F. Smith) with other members of the Board of Trade for the purchase and sale of wheat, corn and pork, were made in accordance with the rules and regulations of the board, and were not illegal under the law of Illinois : Perin v. Parker, 126 Ill. 203; Samuel v. Oliver, 130 Ill. 79; Pixley v. Boynton, 79 Ill. 352; Corbett v. Underwood, 83 Ill. 326; Wolcott v. Heath, 78 Ill. 436; Peters v. Grim, 149 Pa. 163; Smith v. Bouvier, 70 Pa. 330; Oldershaw v. Knole, 4 Bradwell, (Ill. Ap.) 63.] [5, 6]

" We are of opinion, and find, that, notwithstanding this fact, F. G. Kammerer and Wm. F. Smith could have had a contract between themselves that would be illegal. If F. G. Kammerer agreed with Wm. F. Smith that he would not reveal his name on the Board of Trade, but would himself stand as principal in the deals he there made with his fellow brokers and would assume all responsibility as to the delivery of the grain, etc., but would allow Smith to have the benefit of the deals he ordered without being bound to receive or deliver any wheat, corn or pork, and agreed to pay him all the gains he made on sales provided Smith would pay him his commissions and make good all losses on sales, and would keep deposited with him sufficient margins to protect him against the losses, then the contract between Kammerer and Smith would be a gambling contract. In such a case Smith would not be interested in the contract of purchases and sales made by Kammerer on the board but would be only interested in the rise or fall of the market between the time of purchase and sale. The stipulation between them would simply be that Smith would gain

if the wheat Kammerer bought from a broker should be sold
by Kammerer to some other broker at a higher price, and would
lose if sold for a lower price. In other words, Smith would
be betting with Kammerer that purchases and sales that he
made with other brokers on the board, at his direction, would
be profitable; if Smith won, he took the profits, less Kam-
merer's commission; if he lost, he paid Kammerer the loss and
commissions. In such a case Kammerer would be dealing with
Smith as a principal, and not as his agent: Schneider v. Tur-
ner, 130 Ill. 28; Pearce v. Foote, 113 Ill. 228; Tenney v.
Foote, 4 Bradwell, 594; Fareira v. Gabell, 89 Pa. 89; North
v. Phillips, 89 Pa. 250; Brua's Ap., 55 Pa. 294; Gaw v. Ben-
nett, 153 Pa. 247.

" (c) We are of opinion, and so find, that if the contract
between Smith and Kammerer was of the character that Smith
testifies it was, then it was a gambling contract and illegal,
and the note upon which judgment was entered in this case
was void for want of a legal consideration, notwithstanding
Kammerer's contracts of purchases and sales on the Board of
Trade with other brokers were legal; but if Kammerer was not
acting under an independent contract such as Smith sets up,
wherein they were both principals, but was acting only as
Smith's agent in making bona fide purchases and sales on the
Board of Trade, such as we have found he did make, then the
contract between them would not be illegal, and the note in
question would not be void.

" [ (d) This brings us to the point where we must determine
between the credibility of the two principal witnesses, or rather
determine whether the petitioner, in the face of the denial of
the respondent, has made out such a case as entitles him to
equitable relief. Kammerer's story is consistent with and up-
holds the legality of the transaction in which he was engaged.
Smith's story brands the transaction in which he was a party as
illegal, and necessarily puts him in a position where he must
plead his own turpitude. The undisputed facts in the case
are as consistent with Kammerer's story as they are with Smith's,
and on the whole testimony we are of opinion that the peti-
tioner has not supported his petition, its material averments
being denied by the respondent, with sufficient proof to warrant
the court in opening the judgment and sending the case to a
jury.] [7]

"(*e*) We are of opinion that the question here involved is not res adjudicata. The plaintiff's bill in the equity case, Smith v. Kammerer, 152 Pa. 98, was dismissed for want of jurisdiction.

"(*f*) Although we are not fully satisfied that the maxim ' No man shall plead his own iniquity in order to obtain equity,' applies to a case of this kind where a question of public interest is involved, still that fact should have its weight in passing on the petitioner's prayer for relief. Griffith's Appeal, 16 W. N. 249, is the only case we have been able to find where a judgment entered on a note given in a wagering contract was opened and the defendant let into a defence. In Ruchizky v. De Haven, 97 Pa. 210, and Stewart v. Parnell, 147 Pa. 527, are dicta which appear to be on the other side of the question. See also Marriam v. Grain and Stock Exchange, 1 Pa. C. C. R. 478.

"[ (*g*) We are of opinion that the power in the warrant of attorney to confess judgment ' in favor of the holder of the note,' was sufficient warrant to J. F. McFarland, Esq., to confess judgment in favor of H. C. Champlin, who was then the holder of the note, and that judgment was not irregularly entered in his favor.] [1] Rule discharged."

*Errors assigned* were, among others, portions of opinion in brackets, and decree, quoting them.

*A. A. Purman, Boyd Crumrine* with him, for appellant.—The warrant authorized a confession of judgment to Kammerer & Co. only.

The discretion of the court below was not rightly exercised: Jenkintown Bank's Ap., 124 Pa. 337; Knarr v. Elgren, 19 W. N. 531; Griffiths's Ap., 16 W. N. 249; act of April 4, 1877, P. L. 53; Scott's Ap., 123 Pa. 155.

The intention of both Smith and Kammerer may be inferred and found from course of dealings: Seymour v. Wilson, 14 N. Y. 567; Forbes v. Waller, 25 N. Y. 439; Smith v. Higgins, 82 Mass. 251; Russell v. Miller, 26 Mich. 1.

The dealings all through show that they were on margins and adjusted on differences and hence strong evidence to show that Smith is more worthy of credit than Kammerer: Lee v. Wheeler, 11 Gray 236; Bank v. Kennedy, 17 Wall. 19; Fisk v. Inhabitants, 74 Mass. 506.

Such dealings as were had between Kammerer and Smith are gambling operations whether called dealings on the Board of Trade, under the rules and regulations thereof, or not: Brua's Ap., 55 Pa. 296; Gaw v. Bennett, 153 Pa. 247.

The common law holding gambling contracts void is in force in Illinois: Pickering v. Cease, 79 Ill. 328; Cothran v. Ellis, 125 Ill. 496. The decisions hold such contracts as these void as against public policy: Higgins v. McCrea, 116 U. S. 671; White v. Barber, 123 U. S. 392; Lyon v. Culbertson, 83 Ill. 33; Coffman v. Young, 20 Ill. Ap. 76; Brown, Graves & Co. v. Alexander, 29 Ill. Ap. 626; Wheeler v. McDermid, 36 Ill. Ap. 179; Grubey v. Nat. Bank of Ill., 35 Ill. Ap. 354; Pearce v. Foote, 113 Ill. 228; Mallett v. Butcher, 41 Ill. 382. See also Greenhood on Public Policy, part. XI, c. 1, rule CCCCLI, illustrations A to H; Fisher v. Bush, 35 Hun (N. Y.) 641; Hope v. Int. Fin. Socy., L. R. 4 Ch. Div. 327; Dickson's Ex. v. Thomas, 97 Pa. 278; Lyon v. Culbertson, 83 Ill. 33; Embrey v. Jemison, 131 U. S. 336; Fareira v. Gabell, 89 Pa. 89; Harvey v. Merrill, 150 Mass. 1; 3 A. & E. Ency. L. 873; Smith v. Bouvier, 70 Pa. 325; North v. Phillips, 89 Pa. 250; Maxton v. Gheen, 75 Pa. 168; Peters v. Grim, 149 Pa. 164; Griffiths v. Sears, 112 Pa. 523; Ruchizky v. De Haven, 97 Pa. 202; Gaw v. Bennett, 153 Pa. 247.

*T. Jeff. Duncan* and *J. H. Batten, Geo. L. Wiley, J. A. J. Buchanan* and *D. S. Walton* with them, for appellee.—The confession was authorized by the warrant: Vietor v. Johnson, 148 Pa. 583; Cooper v. Shaver, 101 Pa. 547; James v. Crownover, 6 Atl. R. 42; Rex v. Nelson, 15 Phila. 323.

The contract between Smith and Kammerer did not involve a gambling transaction: Bank v. Fiske, 133 Pa. 241; Wall v. Schneider, 59 Wis. 352; Sandheim v. Gilbert, 10 Am. St. R. 26; Wolcott v. Heath, 78 Ill. 436; Logan v. Musick, 81 Ill. 415; Pixley v. Boynton, 79 Ill. 352; Corbett v. Underwood, 83 Ill. 326; Ware v. Jordan, 25 Ap. Ct. R. Ill. 534; Benson v. Morgan & Co., 26 Ap. Ct. R. Ill. 23; White v. Barber, 123 U. S. 392; Perin v. Parker, 126 Ill. 203; Mortimer v. McCallen, 6 M. & W. 58; Child v. Morley, 8 T. R. 610; Fortenbury v. State, 1 S. W. R. 58; Tenney v. Foote, 95 Ill. 99; Benj., Sales, 4th ed. 542; Clarke v. Foss, 7 Bissel, 540; Hatch v. Douglass,

48 Conn. 116 , Clay v. Allison, 63 Miss. 426 ; Conner v. Robinson, 55 Am. R. 521; Bigelow v. Benedict, 70 N. Y. 202; Smith v. Bouvier, 70 Pa. 325; Fareira v. Gabell, 89 Pa. 90; Potts v. Dunlap, 110 Pa. 177 ; Besby and Zimmons on Law of Board of Trade, 285 ; Crawford v. Spencer, 92 Mo. 498 ; Bishop on Contracts, § 534; Note in 1 Am. St. R. 757, et sec. ; Oldershaw v. Knoles, 4 Bradwell, 63.

PER CURIAM, Oct. 29, 1894 :

This contention is the offspring of Illinois contracts, the legal effect of which depends mainly on the lex loci contractus, and that appears to have been properly applied.

We are satisfied from an examination of the pleadings and evidence that there is no substantial error in either of the findings of fact complained of in several of the specifications; nor do we think there is any error in any of the material conclusions drawn therefrom. All the questions involved in the assignments of error have been so fully considered and satisfactorily disposed of by the learned president of the common pleas that little if anything can be profitably added to what is contained in his opinion sent up with the record. On that opinion the decree discharging the rule to show cause why the judgment should not be opened and the defendant let into a defence, etc., is affirmed and appeal dismissed with costs to be paid by appellant.