**MILYONICO et al. v. UNITED STATES.**

**No. 4474.**

Circuit Court of Appeals, Seventh Circuit.
Oct. 24, 1931.

Rehearing Denied Dec. 29, 1931.

Harold J. Bandy, of Granite, Ill., for appellants.

Walter M. Provine, U. S. Atty., of Springfield, Ill., Frank K. Lemon, U. S. Atty., of Clinton, Ill., and Marks Alexander, Asst. U. S. Atty., of Springfield, Ill.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

The errors relied upon separately by appellants are: (1) The overruling of appellants' motion, made before the trial, to suppress all evidence obtained in the search of the dwelling house of appellant Milyonico on December 6, 1928; (2) the overruling of appellants' motion for a directed verdict of not guilty; and (3) the overruling of appellants' motion for a new trial.

The only question presented for our determination is whether or not there was an unlawful search and seizure, inasmuch as each error assigned depends upon the answer to that question.

The evidence introduced in this cause was sufficient to warrant a finding of the following facts: Federal Agents Durbin, Marshall, and Simonson, on December 6, 1928, while riding past Milyonico's residence noticed the odor of fermenting mash. They stopped their car, and without a search warrant entered the premises by the front gate. Simonson went to the front door, Marshall to the side door, and Durbin went around the side of the house and to the garage on the rear of the lot, where he saw vats containing fermenting mash. Durbin then walked back to the rear, and through an open window saw Milyonico inside the rear room of his residence standing near the open window. Durbin displayed his badge and told Milyonico that he, Durbin, was a federal officer, to which Milyonico replied that he knew it, and said, "Come in and I will show you one of the nicest stills you ever saw." Milyonico asked for no search warrant, but opened the double doors at the rear, which were like garage doors and sufficiently wide to admit a truck; and Durbin, in response to the invitation, entered. He saw in that room a vat and 14 five-gallon cans of alcohol, an electric pump and heater, and a still which was then in operation. About that time, Simonson and Marshall, who had previously entered the house through the front and side doors, respectively, came through the house with Abbaco, whom they had apprehended, to the rear room where Durbin and Milyonico were. The appellants were arrested, and the still and its appurtenances,

938

and all the product and all materials for making the product, were seized and destroyed.

Abbaco resided at St. Louis. He was then working for Milyonico . at the residence where the arrest was made, and had been for several weeks, and during that time he had lived at the residence of Milyonico.

When Simonson approached the residence, he knocked on the front door. This was answered by a child of about five years of age, who invited him in. He entered and saw Abbaco hurriedly starting upstairs. Simonson disclosed his identity and hailed Abbaco, who stopped. Simonson informed Abbaco that he understood there was a still in the house and asked to be taken to it. They thereupon went through the house to the room where Durbin and Milyonico were.

When Marshall approached the residence, he knocked on the side door. This was answered by Mrs. Milyonico, who, being informed by Marshall that he was a prohibition agent, invited him in. He thereupon entered and saw Simonson and Abbaco coming from the front part of the house. Marshall asked Mrs. Milyonico where the still was, and she pointed to a door, which led to the room where he found appellant Milyonico in custody of Durbin.

With this evidence in the record, we do not deem it necessary to consider the question as to whether or not the entry, search, and seizure by Durbin without a warrant were in violation of the constitutional rights of Milyonico because the trial court was fully justified in finding that Milyonico not only consented to them, but invited them. There is no evidence that coercion or mental force was used, and Milyonico is in no position to claim that his constitutional rights were invaded. Waxman v. United States (C. C. A.) 12 F.(2d) 775; Giacolone v. United States (C. C. A.) 13 F. (2d) 110; Schutte v. United States (C. C. A.) 21 F.(2d) 830; Key v. United States (C. C. A.) 26 F.(2d) 241.

If the entries of Simonson and Marshall in the first instance were unlawful, their evidence relating to the facts prior to their entry into the stillroom where Durbin and Milyonico were could in no way be considered as prejudicial. They saw nothing and testified to nothing which Durbin, by the invitation of Milyonico, had not already seen, and when they came into the stillroom, in the presence of Milyonico and Dur-

bin, not a word of objection was uttered by Milyonico.

As to Abbaco, the residence which was raided was not his home. He resided at St. Louis and was temporarily employed at the residence of Milyonico. Whether or not Abbaco was entitled to have the sanctity of his private room in that house protected is not before us, because there is no evidence that such sanctity was ever violated. Whatever may have been his rights as a roomer, they certainly could not override the permission and invitation of his employer, who was the owner of the residence, as well as of all the property seized.

Judgment affirmed.