**BENNETT et al. v. UNITED STATES.**
No. 7169.

United States Court of Appeals for the District of Columbia.

Decided Feb. 27, 1939.

On Petition for Rehearing and Stay of Mandate May 3, 1939.

Harry T. Whelan and W. B. O'Connell, both of Washington, D. C., for appellants.

David A. Pine, U. S. Atty., and William Hitz, Jr., and Charles B. Murray, Asst. U. S. Attys., all of Washington, D. C.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

Appellants were convicted of the felony of transporting stolen goods in interstate commerce. 18 U.S.C. § 415, 18 U.S.C.A. § 415.

Officers seated in a Washington restaurant saw Mr. Strohecker, a real estate dealer, stop at a booth in which defendants were seated, saw defendant James Bennett hand articles of jewelry to Strohecker, and saw Strohecker examine them. The officers did not know defendants, but apparently knew Strohecker. Strohecker presently told the officers that he did not know defendants either; that "they" were from New York, and had a lot of jewelry which they had offered to sell him; that the price was ridiculous, and that he therefore believed it was "hot." Within the next few days the officers, without a warrant, twice arrested defendant Eula Mae Bennett. After the first arrest she was searched. The second arrest was in her hotel room, which she opened to admit the officers. On both occasions jewelry which later proved to be stolen was found in her possession.

Appellants dispute the sufficiency of the evidence, and also assign as error "admitting in evidence property illegally seized." We need not consider whether the seizures were illegal, for appellants should have asserted their supposed rights in that regard before trial. The Supreme Court has held that "except where there has been no opportunity to present the

matter in advance of trial * * * a court, when engaged in trying a criminal case, will not take notice of the manner in which witnesses have possessed themselves of papers or other articles of personal property, which are material and properly offered in evidence. * * *" It will not "halt in the orderly progress of a cause and consider incidentally a question which has happened to cross the path of such litigation and which is wholly independent of it. In other words, in order to raise the question of illegal seizure, and an absence of probable cause in that seizure, the defendants should have moved to have the whisky and other liquor returned to them as their property and as not subject to seizure or use as evidence." Segurola v. United States, 275 U.S. 106, 111, 112, 48 S.Ct. 77, 79, 72 L.Ed. 186.

 Appellants contend there is no proof that a bracelet stolen in Connecticut was transported, as charged, from New York. They drove from New York to Washington, and then had the bracelet in Washington. It may be inferred that they brought it from New York, and not on some possible previous trip from Connecticut to Washington through Vermont, Canada, and Pennsylvania, or by sea. There is no basis for appellant's contention that Section 415 is limited to transportation for commercial purposes.

 The evidence against James Bennett was so strong that we do not discuss it. It pointed to him not only as transporter but as thief. He was seen close to the time and place of one of the thefts, and the circumstances of the several thefts were strikingly similar. The evidence against Eula Mae Bennett was somewhat less strong, but the following testimony tended to fasten both interstate transportation and guilty knowledge upon her. She lived with James, in New York, as his wife. She made the trip to Washington with him in his car. In Washington he offered stolen jewelry for sale, in her presence, at prices which suggested that it was "hot." A ring and wrist watch stolen in New York were in her possession in Washington. She gave the police conflicting explanations of her possession of the ring; it was given her by Bennett, and it was given her by a doctor. She exercised her right to refuse to testify, and so the jury had the testimony of the police on this point without contradiction or explanation. Bennett gave her the ring, at

least, before the trip to Washington. When he gave it to her, he laid several rings on a table and she selected that one as the prettiest of the lot. The trip to Washington was followed almost immediately by the transaction in the restaurant and the interviews with the police. What she knew then, she probably knew during the journey. It is probable that if Eula Mae had not previously, and therefore during the trip, been in James's confidence, he would not have offered the stolen jewelry for sale, at "hot" prices, in her presence. In our opinion the evidence as a whole justified the jury in finding beyond reasonable doubt that Eula Mae Bennett, as well as James Bennett, transported stolen articles in interstate commerce, knowing them to have been stolen.

██ According to police testimony Eula Mae Bennett was arrested, without a warrant, for "investigation," and was held on that "charge" for "quite some time." Investigation is not a charge. It may be that the police had probable cause to believe her guilty of a specific felony, and that her arrest was therefore lawful: we do not find it necessary to pass upon that point. But we deem this an appropriate time to say that confinement without a charge violates one of the important rights of the citizen.

Affirmed.

STEPHENS, Associate Justice (concurring in part, dissenting in part).

I concur in the opinion of the majority that, in view of Segurola v. United States, 275 U.S. 106, 48 S.Ct. 77, 72 L.Ed. 186, the admission in evidence of the property seized was not erroneous. I concur also in respect of the conviction of James Bennett.

I dissent in respect of the conviction of Eula Mae Bennett. I think that the evidence was sufficient to prove that she transported the ring and the wrist watch from New York to Washington, but I think it was insufficient to prove that at the time she was transporting them she had knowledge that they had been stolen. This is necessary under the statute. The only items of evidence which it can even be claimed are relevant to this issue of guilty knowledge are that: (1) Eula Mae Bennett had been living with Bennett; (2) he cast several rings down before her at the time she chose one; (3) she heard him in the restaurant offering jewelry for sale

at ridiculously low prices; (4) she gave inconsistent explanations as to where she obtained the ring. The third and fourth items are after the transportation and are therefore no evidence that she knew at the time of transportation that the ring and wrist watch were stolen. The second item is no evidence of guilty knowledge unless at the time she had some other reason to believe that Bennett had come by the rings dishonestly. There is nothing in the record to show that she did. Offering a choice of gifts is not, without more, evidence of theft. The first item shows no more than a possible opportunity on her part to know of the activities of Bennett. I think these four items constitute far too flimsy a web to hold Eula Mae Bennett. The conviction could be sustained, I think, only upon a theory that the guilty knowledge of Bennett is to be imputed to the woman who was living with him as his wife. I think this untenable.

I am unable to concur in the view of the majority as expressed in the last paragraph of the opinion. The violation of right involved in the aspect of the case there referred to was in the arrest of Eula Mae Bennett without a warrant, in the absence of reasonable grounds to believe that she had committed a felony. This violation could not have been cured by anything written upon a police blotter. If, on the other hand, there was probable cause for her arrest, what was written upon the police blotter was immaterial.

While in view of Segurola v. United States, the falsity of the arrest and consequent improper seizure of evidence did not—for lack of a motion before trial— require the exclusion of the evidence, the falsity of the arrest was made an issue in the case and argued and is in my view worthy of comment further. As I read the record the officer who ordered the arrest acted in so doing as a result of the following: The officer was in the Biltmore Buffet, a restaurant in the District of Columbia. He saw a real estate man named Strohecker talking to the Bennetts and saw jewelry displayed by Bennett and examined by Strohecker. The officer did not hear what was said, but it was reported to him by Strohecker: Strohecker said that Bennett had displayed certain jewelry to him and had said that it was for sale at prices very much less than value. Later, according to the testimony of the officer, he had a further conversation with Strohecker, at another place, as follows:

"Then over there I asked him further who they were and he told me he didn't know exactly who they were, but that they were from New York and they had a lot of jewelry, for sale, and that because of the ridiculous price of it that he believed it was hot.

"Q. Well, did he tell you that he thought it was a ridiculous price? A. He did.

"Q. Did you have any reason at that time to suspect the jewelry had been stolen except from what Mr. Strohecker told you? A. Well, that coupled with the fact that we did not know who these people were.

"Q. The mere fact that you did not know who they were, was that sufficient to cause you to suspect the jewelry had been stolen, in addition to what Mr. Strohecker had told you? A. That strengthened the suspicion, when he did tell us that.

"Q. Did you have any other reason for suspecting the jewelry was stolen? A. No, sir, none whatever.

"Q. Well, did you suspect it was stolen? A. Yes, sir."

Except for the implication in the word "they" in Strohecker's statement "they had a lot of jewelry, for sale," Strohecker did not say that any jewelry either in the possession or on the person of Eula Mae Bennett was offered. The officer's testimony is summarized in the record as follows:

"In explaining why he ordered the said Eula Mae Bennett arrested, the witness stated that even though he had no information to the effect that a crime had been committed, he nevertheless suspected that the jewelry which he had seen displayed at the Biltmore Buffet, was stolen, and it was for this reason that he ordered her arrest."

When Eula Mae Bennett was arrested, all that she was charged with on the police blotter was "investigation." Nothing was noted then to the effect that she had committed a crime or that it was believed she had. Even after she had been arrested and searched, she was released and all jewelry found in her possession returned to her.[1]

I do not dispute that an officer may, in making an arrest, act upon information

---

[1] She was later re-arrested and held for trial.

received from third persons. But I think it clear from the foregoing that the officer ordered the arrest of Eula Mae Bennett on mere suspicion without any information that a crime had been committed by her. If the officer had reasonable grounds to believe that she had committed a crime, he would in the normal course of duty have indicated upon the police blotter for what crime she was arrested. Undoubtedly he was stating the fact when he indicated for the blotter that she was arrested for "investigation." And if, after arresting and searching her and finding jewelry in her possession, it was thought that there was still insufficient evidence to hold her, how could the officer reasonably have believed upon the mere statements of Strohecker and the episode at the restaurant that Eula Mae Bennett had committed a crime? It is true that at the moment of actual arrest she was boarding a train for Baltimore. But this was not a circumstance which had actuated the minds of the officers because, according to the record, it had already been decided to arrest her; the officers to do so went to the hotel where she had been staying and only after they reached the hotel did they discover that she was about to go to Baltimore. But even if this circumstance be added to the sum of information upon which the arrest was made, still I think there was insufficient ground to believe that Eula Mae Bennett had committed a felony.

I think it clear from the admissions of the officer as above set forth that he ordered the arrest of Eula Mae Bennett upon mere suspicion "coupled with the fact that we [the officers] did not know who these people were." It is being known to the police that is usually regarded as inculpatory, rather than the contrary.

I think thus that not only was Eula Mae Bennett improperly convicted, but also that she was improperly arrested. The liberty of the citizen should not be invaded upon mere suspicion.

On Petition for Rehearing and Stay of Mandate.

PER CURIAM.

The ground on which rehearing is asked is that in our former opinion we declined to pass on the objections of the defendant, Eula Mae Bennett, based on the admission of evidence respecting certain property claimed to have been illegally seized from her at the time of her arrest. On that subject we said: "We need not consider whether the seizures were illegal, for appellants should have asserted their supposed rights in that regard before trial."

It now appears from the motion of appellants, and appears to be conceded by the attorney of the United States, that it is the established practice of the trial judge who heard the case, not to allow a question of this nature to be taken up prior to trial, and that he would have enforced this practice in this case if appellants had made the appropriate motion before trial.

In view of this fact, it is obvious that our affirmance of the judgment of conviction should not stand, since the case is actually one "where there has been no opportunity to present the matter in advance of trial". In that view, we have considered the case anew, and a majority of the court are of opinion that the evidence in question was improperly admitted over the objection of Eula Mae Bennett, because the testimony concerning her arrest shows that at the time there was not reasonable ground to believe she had committed a felony.

Since a rehearing would be an unnecessary consumption of time, and because, for the reasons above stated, a new trial should be awarded defendant Eula Mae Bennett, the third paragraph of our former judgment in this case will be amended to read as follows: "On consideration whereof, It is now here ordered and adjudged by this court that the judgment of the said District Court, in this cause be, and the same is hereby, affirmed as to James Bennett, and reversed as to Eula Mae Bennett; and that this cause be, and it is hereby, remanded to the said District Court with instructions to award a new trial to defendant Eula Mae Bennett."

The mandate in this case will issue forthwith. It is so ordered.