**MORTON v. UNITED STATES.**

No. 8653.

United States Court of Appeals
District of Columbia.

Decided Jan. 22, 1945.

Writ of Certiorari Denied April 9, 1945.
See 65 S.Ct. 1015.

Mr. Charles W. Arth, of Washington, D. C. (appointed by District Court to prosecute appeal, but not trial counsel), for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and John P. Burke, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

The dead body of Grace G. Groome was found in Rock Creek Park on August 29, 1943. Appellant was convicted of second degree murder, upon circumstantial evidence which pointed to him as the killer. He appealed from the judgment of the trial court which imposed a sentence of imprisonment and, on appeal, presented two contentions: First, that the court received in evidence, against him, incompetent testimony; second, that the competent evidence which was given at the trial was insufficient to support the verdict.

It is not necessary to review in detail the gruesome evidence presented by the Government, which shows in summary that Mrs. Groome was last seen in company with appellant on Saturday afternoon, August 28; he was seen at nine o'clock the same night, with blood on his clothing; and again at eleven o'clock, with blood on his face and clothing; Mrs. Groome's nearly nude body was discovered about eight o'clock the following Sunday morning, badly beaten, bruised and wounded about the face, head, neck, hands, wrists, hips, thighs, buttocks and privates; her nose was crushed, she had a fractured skull and a brain hemorrhage; she had died twelve or fourteen hours earlier, approximately at the time when she was last seen in appellant's company; appellant was taken into custody on the following Monday and at the same time, bloodstained clothing was taken from his closet; he admitted being with Mrs. Groome in the Park and that he slapped her; he denied killing her or doing any serious injury to her and said that when he left her she was all right; his body was subjected to tests for blood— with his permission—and blood was found on his hands, arms and privates; he had, also, scratches on his hands and arms. There was other evidence which supported the theory of appellant's guilt, especially the finding of a broken whiskey bottle near Mrs. Groome's body, identical with one which had been purchased by appellant from a liquor dealer, who later identified appellant to the police before he was taken into custody on Monday morning. Although the evidence as to appellant's participation in the crime was circumstantial,

it was clearly sufficient—if admissible—to support the verdict of the jury.[1] Convictions have been upheld upon much less conclusive evidence.[2] The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.[3]

██ It is contended, on behalf of appellant, that the trial court improperly admitted in evidence a sport shirt and a pair of trousers taken from his closet and a partly filled bottle of whiskey and a newspaper taken from a table in his room. Appellant properly conceded that an officer making a lawful arrest on a criminal charge may take such articles as may reasonably be used as evidence;[4] but here, he says there was no arrest on a criminal charge at the time the articles were taken. Appellant's summary of the evidence upon this point reads as follows: "Shortly after ten o'clock he heard a knock at the door, and said: 'Yes?'; the door opened and three men, whom he later learned were Officers Murray, Sheedy and Felber, came in; all were dressed in brown suits; the landlady was not at the door. Defendant asked the men who they were and what they wanted; they said they were from Police Headquarters and Inspector Barrett wanted to talk to him; he said he had met the Inspector once a long time ago, and asked what the Inspector wanted to talk to him about; Officer Murray said: 'You will find out after you get down there.' Murray opened the closet door and started going through the clothes bag. Defendant got dressed, and the officers took him to the police car; Murray told the man in the car: 'You hold him here while we search his room'; they did not tell defendant that he was under arrest; they had no warrant, and defendant did not permit them to search the room." The police officers testified that appellant invited them to come in;[5] they immediately identified themselves as officers; one of them picked up a whisky bottle on the table to look at the stamp number; appellant volunteered that he had more whiskey bottles in his closet; they looked in the closet and found there, not only more bottles, but the bloodstained clothing; before going to appellant's room the officers knew that Mrs. Groome had been killed; and the liquor dealer had identified appellant to them as the man who had purchased liquor from him, prior to the killing—in a bottle of the same kind and bearing the same stamp number as one found at the scene of the murder—and who had come back later for more liquor, with blood on his clothing. In other respects their testimony was substantially in accord with that of appellant upon this point. This was sufficient to justify an arrest without a warrant[6] and the statement of what occurred—even as given by appellant—shows that an arrest was made.[7] Cases relied upon by appellant, which are concerned with resistance to arrest,[8] or to

[1] See Glasser v. United States, 315 U. S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Crumpton v. United States, 138 U.S. 361, 362, 363, 11 S.Ct. 355, 34 L.Ed. 958; Sanford v. United States, 69 App.D.C. 44, 98 F.2d 325; United States v. Manton, 2 Cir., 107 F.2d 834, 839; Rosengarten v. United States, 6 Cir., 32 F.2d 644.

[2] See Perovich v. United States, 205 U. S. 86, 91, 27 S.Ct. 456, 51 L.Ed. 722; cf. McAffee v. United States, 72 App.D.C. 60, 111 F.2d 199, certiorari denied 310 U.S. 643, 60 S.Ct. 1094, 84 L.Ed. 1410.

[3] Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

[4] Shettel v. United States, 72 App.D.C. 250, 113 F.2d 34, and cases cited; Smith v. United States, 70 App.D.C. 255, 257, 105 F.2d 778, 780, and cases cited; Taylor v. Hudspeth, 10 Cir., 113 F.2d 825, 826: "Right to object on the ground of illegal seizure is waived unless there is a timely motion to suppress the evidence." Segurola v. United States, 275 U.S. 106, 111, 112, 48 S.Ct. 77, 72 L.Ed. 186; Bennett v. United States, 70 App.D.C. 76, 104 F.

2d 209; Cromer v. United States, 78 U. S.App. 400, 402, 142 F.2d 697, 699, certiorari denied 322 U.S. 760, 64 S.Ct. 1274.

[5] Cf. Milyonico v. United States, 7 Cir., 53 F.2d 937; De Lapp v. United States, 8 Cir., 53 F.2d 627.

[6] Maghan v. Jerome, 67 App.D.C. 9, 10, 88 F.2d 1001, 1002; see United Cigar Stores Company v. Young, 36 App.D.C. 390, 403; Carroll v. Parry, 48 App.D.C. 453, 459.

[7] Long v. Ansell, 63 App.D.C. 68, 71, 69 F.2d 386, 389, 94 A.L.R. 1466: "From these authorities it may be concluded, we think, that the term arrest may be applied to any case where a person is taken into custody or restrained of his full liberty, or where the detention of a person in custody is continued for even a short period of time."; State ex rel. Sadler v. District Court, 70 Mont. 378, 225 P. 1000; McAleer v. Good, 216 Pa. 473, 65 A. 934, 10 L.R.A.,N.S., 303, 116 Am.St.Rep. 782; see, generally, Perkins, The Law of Arrest (1940) 25 Iowa L.Rev. 201, 248.

[8] Drennan v. People, 10 Mich. 169.

persons who are unaware of the official character of those who make the arrest,[9] are not in point here.

■ Objection is made, on behalf of the appellant, that the Government failed to call some witnesses who might have given admissible evidence. Assuming their availability and the competency and materiality of their testimony, still no error is shown, in the absence of a showing that evidence material to appellant's defense was suppressed.[10] It is necessary in the prosecution of a case that evidence and witnesses be sifted and selected with a view to economy of trial-time and the better understanding of the case by the jury.[11] No useful purpose is served by using a scattergun.

■ The Government sustains its burden when it presents evidence sufficient to establish the guilt of the accused.[12] This varies with each case, the nature of the accusation, and the defenses advanced by the accused. Process was available to appellant to call additional witnesses if he wished to do so.[13] Skilled lawyers, advised by their clients, make their decisions upon these questions, in view of their familiarity with the facts and the law. It is not the function of appellate courts to retry cases upon the intangibles involved in evidence which might have been, but was not, introduced at the trial.

■ Appellant's objections to evidence —concerning interest and bias of witnesses, blood tests, soil tests, whiskey bottles, photographs of the park table under which Mrs. Groome's body was found, and the newspaper containing a report of the crime which was found in appellant's room—are applicable to the weight of the evidence, in each case, not to its admissibility.[14] The jury was properly instructed upon the subject of credibility of witnesses and of the weight to be given to their testimony. There was no error in this respect.

■ The trial court admitted testimony of a police officer concerning admissions made to him by appellant after his arrest. Its admissibility is challenged on the ground that when appellant was questioned "he was nervous and jittery, was very much under the influence of liquor * * * the police did not at any time warn him whatever he said would be used against him, or even tell him that he was charged with any crime; and therefore he had no reason to think that he needed counsel." These facts, assuming their correctness, did not render the admissions inadmissible. Even a confession, given under such circumstances, would have been admissible.[15] The rules governing the reception in evidence of admissions are much less onerous than those concerning confessions.[16] There was no reason for an instruction as to the difference between an admission and a confession. That was a question of law, not for the jury, but for the trial judge.[17] There was no reason for an instruction on what constitutes an in-

[9] State v. Taylor, 70 Vt. 1, 39 A. 447, 42 L.R.A. 673, 67 Am.St.Rep. 648; Graham v. State, 143 Ga. 440, 85 S.E. 328. Ann. Cas.1917A, 595.

[10] Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; see, generally, 2 Wigmore, Evidence (3d ed. 1940) § 278.

[11] See, 7 Wigmore, Evidence (3d ed. 1940) § 2078; 2 Wigmore, Evidence (3d ed. 1940) §§ 288, 287: "It seems plain that possible witnesses whose testimony is for any reason comparatively *unimportant*, or *cumulative*, or *inferior* to what is already utilized, might well be dispensed with by a party on general grounds of expense and inconvenience, without any apprehension as to the tenor of their testimony. In other words, put somewhat more strongly, there is a general limitation (depending for its application on the facts of each case) that the inference cannot fairly be drawn except from the non-production of witnesses whose testimony would be su-

perior in respect to the fact to be proved.";
see also, Morris v. United States, 61 App. D.C. 257, 61 F.2d 520.

[12] Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Egan v. United States, 52 App.D.C. 384, 389, 287 F. 958, 963.

[13] U.S.Const. Amend. VI; 28 U.S.C.A. §§ 654, 656.

[14] Crumpton v. United States, 138 U.S. 361, 363, 11 S.Ct. 355, 34 L.Ed. 958; see 1 Wigmore, Evidence (3d ed. 1940) §§ 12, 28.

[15] McAffee v. United States, 70 App.D.C. 142, 145, 105 F.2d 21, 24; McAffee v. United States, 72 App.D.C. 60, 111 F.2d 199, certiorari denied, 310 U.S. 643, 60 S. Ct. 1094, 84 L.Ed. 1410; Bell v. United States, 60 App.D.C. 76, 47 F.2d 438, 74 A.L.R. 1098.

[16] Ercoli v. United States, 76 U.S.App. 360, 131 F.2d 354.

[17] See, generally, 3 Wigmore, Evidence (3d ed. 1940) § 821.

voluntary confession, because no confession was offered or received in evidence.[18] On the contrary, appellant denied that he had killed Mrs. Groome, and the officer so testified. Moreover, an instruction concerning involuntariness of confessions was offered in appellant's behalf and given by the trial judge. Appellant's counsel expressed satisfaction with the instructions as given. There was no error here.[19]

■ The McNabb[20] and Mitchell[21] cases, relied upon by appellant, provide no basis for reversal in the present case. Here, there was no delay in taking the accused before the Commissioner. On the contrary, the record, at several points, indicates prompt compliance with the requirement of the Code.[22]

We have examined, carefully, all appellant's contentions, and find no reason to disturb the judgment of the trial court.

Affirmed.

[18] See Ercoli v. United States, 76 U.S. App. 360, 131 F.2d 354, and cases cited.

[19] See Sullivan v. United States, 9 Cir., 32 F.2d 992.

[20] McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

[21] United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896.

[22] 18 U.S.C.A. § 595.