UNITED STATES of America

v.

Mike MANOS.

Cr. No. 63–200.

United States District Court
W. D. Pennsylvania.

Nov. 15, 1963.

Robert E. Tucker, Asst. U. S. Atty., Gustave Diamond, U. S. Atty., Pittsburgh, Pa., for the United States.

138

Sherman K. Levine, Alfred Papa, New Castle, Pa., for defendant.

DUMBAULD, District Judge.

After extensive argument and brief on behalf of defendant in support of motion for a new trial, we have read the record in its entirety and find no justification for granting a new trial. *A fortiori* we find no violation of the Fifth or Sixth Amendments.

Defendant was found guilty by the jury on all three counts of a wagering tax indictment, charging violations, respectively, of 26 U.S.C. 7203 (wilful failure to pay tax); 26 U.S.C. 7272 (failure to register); and 26 U.S.C. 7262 (performing taxable act without having paid tax).

The conviction rests squarely upon the testimony of Francis E. Larkin, an Internal Revenue Intelligence Agent, who testified that on three occasions he was in defendant's place of business. On the first occasion he saw defendant write a number for someone else. On the other two occasions he himself played a number with the defendant. This testimony, if believed by the jury, as it was (and it may be added that it appeared convincing to the Court as well), amply suffices to support the verdict. The element of wilfulness, required for the first count, is supplied by the testimony of another Internal Revenue agent, who testified that at the time of the raid the defendant stated that he was familiar with the gambling tax requirements but considered them inapplicable to himself inasmuch as he did not write any numbers (Tr. 59, 62).

Proof of writing numbers is ample to convict. The statutory definition of lottery in 26 U.S.C. 4421 expressly provides that "the term 'lottery' *includes the numbers game*, policy, and similar types of wagering". (Italics supplied). It is therefore unnecessary to resort to any common law definition of wagering. Defendant contends that the three essential elements of any lottery are (1) consideration; (2) chance; and (3) prize.

He contends that here there was no proof of any prize.

It is true that there was no proof of pay-off here, because Larkin testified that his number did not "hit" (Tr. 15). Card games are not necessarily always played for money; but it would defy common sense to contend that anyone ever played numbers for fun. The witness Larkin gave a general description of the manner in which the numbers racket is conducted, and his description would probably have been more detailed if defendant's counsel had not interposed objection (Tr. 11). However, there is in the transcript reference to "winning numbers" and the jury was certainly well warranted in finding that a person playing a number whose number hit would be entitled to his pay-off. It is not fatal that the witness did not state what rate of return was prevailing at the time and place of his bet.

Likewise, it is not a fatal defect that the agents who conducted the raid at the time defendant was arrested did not find any number slips or paraphernalia in his place of business (Tr. 59). This was not essential to conviction; defendant was properly convicted if the jury believed the testimony of Larkin that the defendant wrote numbers on three occasions.

The crucial issue in the case was thus the credibility of the witness Larkin, and this issue was fairly presented to the jury for its determination. Defendant vigorously attacked Larkin's credibility. First it was contended that he was unreliable because he had wrongly identified another suspect arrested at the same time as the defendant pursuant to information furnished by Larkin's surveillance. The transcript of the arraignment of the other suspect (one Frank Ferrainolo) before the commissioner states that the suspect was "identified". Defendant contends that this identification was made by Larkin. On the other hand, another Internal Revenue agent (Porter), who handled the Ferrainolo arraignment, testified that

Larkin was not present and that when Larkin first saw Ferrainolo in the hall after the arraignment he immediately told Porter that Ferrainolo was the wrong man (Tr. 67–68). Larkin also testified that he did not identify Ferrainolo and that as soon as he saw Ferrainolo he said immediately that he was the wrong man (Tr. 53–55). The truth of the matter with regard to this issue was for determination by the jury, and the topic was adequately presented in the Court's charge. The Court charged that:

"The defendant contends that it was Mr. Larkin who identified the wrong man at the preliminary hearing. On the other hand, the other witnesses testify that Mr. Larkin was not present at the preliminary hearing, at which Mr. Ferrainolo was brought in and that as soon as Mr. Larkin saw the man, he immediately said it was the wrong man.

"So that in order to have any value as to whether or not Mr. Larkin's powers of recollection and identification are weakened by this Ferrainolo incident, you would have to be satisfied that Mr. Larkin had identified Mr. Ferrainolo as being the man and later it was found that he was not.

"If you, however, believe Mr. Larkin's version and that of the other agents that he was not there when the preliminary hearing for Ferrainolo was had and that as soon as he saw him, he said it was the wrong man, why then of course the attack on Mr. Larkin's reliability falls and you exclude the whole Ferrainolo business from your consideration for as I have said, all of these collateral issues of prior inconsistent statements and so on, are admissible solely for the purpose of helping you evaluate the reliability, the credibility and trustworthiness of witnesses and not as any substantive evidence upon the guilt or innocence of the defendant." (Tr. 143–144).

The commissioner's transcript (Exhibit D), after the printed caption "Proceedings taken", reads "5/4/63 Defendant identified as accused, arraigned, and advised of rights, requested hearing, and posted bond in the amount of $1,000.00." On the next line a further typewritten entry begins, which reads: "The complaint is dismissed for the reason that the defendant is not the John Doe described in the complaint."

Defendant also attacked the credibility of Larkin on the ground of prior inconsistent statements.

At the trial Larkin testified as follows:

"On April 13, 1963, I conducted a surveillance of the Colonial Shoe Shine parlor on East Washington Street. That was on April 13, 1963. I entered the establishment at approximately 12:15 p. m. I was standing at the magazine rack, reading a magazine when a man walked up to an individual who he called Mike, who was the individual I pointed out previously and asked Mike for 773 on the early race. Mike pulled out a white piece of paper from his pocket, wrote the number and put the bet, slip and the money in his pocket." (Tr. 12).

The stenographer's transcript showed that at the preliminary hearing Larkin testified as follows:

"Q: Would you briefly relate to us what your investigation disclosed?

"A: On Saturday, April 13, 1963, at 12:15 P.M., while on the premises of the Colonial Shoe Shine Parlor in New Castle, I placed a number bet with Mr. Manos, the number being 733 on the early race." (Tr. 26, 77).

Larkin also testified that on April 15, 1963, he played the number 850 with defendant (Tr. 13). The transcript of the preliminary hearing showed that at that hearing Larkin had said that he had played the number 950 (Tr. 27).

The witness Larkin testified that both at the trial and at the preliminary hear-

ings he had given both numbers correctly, from his original notes (Tr. 26–27).

In rebuttal, the government called the stenographer who checked her notes and found that 773 and 850 were correct (Tr. 75–76).

The likelihood of there being more errors in the transcript than normal is enhanced by the loud noises arising from the construction of a new federal building across the street and the remodeling of the ninth floor of the present United States Court House and post office to provide facilities for the two most newly-appointed Judges (See Tr. 78).

The entire matter of impeaching the credibility of the witness by prior inconsistent statements was adequately covered in the Court's charge:

"Similarly, if a witness on a prior occasion, has given an inconsistent statement or told a different version of the transaction, then that can be proved in order to affect or test the credibility and trustworthiness of the witness' memory and in that connection in this case, we have had quite a bit of testimony regarding the preliminary hearing before the United States Commissioner.

"I might state that the defendant is always presumed to be innocent until the jury is satisfied by testimony produced here in court that he is guilty and the fact that a defendant has been arrested or has been indicted or that a preliminary hearing has been held, has nothing to do with the issue of guilt or innocence and so that the steps taken in the proceedings before the Commissioner are simply preliminary steps, procedural steps that have to be taken in order to bring the case here for trial before you and none of that is probative at all on the issue of guilt or innocence.

"The only purpose for which this testimony concerning the preliminary hearing is offered, is to affect the credibility of the agent, because it is contended by the defendant that

Mr. Larkin at that time testified that the number was 733 instead of 773 or whatever it may have been and Mr. Larkin has testified in rebuttal to that contention, that he testified both times from his notes and that the number was 773 or whatever it may have been.

"There again, what the number actually was is of no importance. Playing any number is just as much a violation of the wagering tax laws as any other number would have been. But as I say, whether it was a green Chevrolet or a black Ford, the number that he remembers playing is of pertinence solely with respect to the accuracy of his recollection and his memory and his trustworthiness and reliability as a witness." (Tr. 141–143).

The charge also made it clear that the Court was not expressing any opinion regarding the fact questions to be determined by the jury. The charge states:

"In that connection, I should perhaps state what the attorneys state and what the Court says is not evidence in the case. All the evidence comes from the witnesses. If the Court inadvertently says anything about the facts of the case, it is purely for purposes of illustration with regard to the applicability of the principles of law that apply to the case.

"The instructions of the Court regarding the law you are required to accept but with regard to the facts of the case, it is your province alone to determine the facts based upon your evaluation of the evidence." (Tr. 138).

■ Defendant also contends that it was the duty of the government to call another Internal Revenue agent (James Good) who accompanied Agent Calvin Shishido on the raiding party which arrested defendant. It is not clear from the testimony of Shishido whether or not Good was with him at all times during the raid and heard the statements made

by defendant concerning his familiarity with the tax stamp requirements. In any event, Good's testimony would only have been corroborative or cumulative. It was not a necessary or essential part of the government's case, and the government was under no duty to call him. Morton v. United States, 79 U.S.App.D. C. 329, 147 F.2d 28, 31 (1945); Fielding v. United States, 164 F.2d 1022, 1023 (C.C.A.6, 1947); Wigmore on Evidence, II §§ 285–290.

Similarly there was no duty to notify defendant's counsel in advance that an error had been discovered in the transcript of the preliminary hearing before the Commissioner. Those proceedings were purely procedural steps, not relevant to the issue of guilt or innocence, and became material only when defendant brought up the question in an attempt to attack Larkin's credibility.

Likewise we find nothing in the wrangling or personalities exchanged in this record which goes beyond the normal decibel level. The attorney for the government did not violate the traditional limitation to striking hard, but not foul, blows. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 237–243, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

Defendant also argues, in seeking a new trial, that a cautionary instruction about identification should have been given, citing the Pennsylvania case of Com. v. Kloiber, 378 Pa. 412, 424, 106 A.2d 820 (1954), to which may be added Com. v. Saunders, 386 Pa. 149, 156, 125 A.2d 442 (1956). The doctrine of these cases, however, is that "where the opportunity for positive identification is good, and the witness—as here Hargrove [lege Larkin]—is positive in his identification, such testimony need not be received with caution." Larkin's identification was so positive, and unshaken by cross-examination, that the possible applicability of the Pennsylvania cautionary rule never even occurred to the Court at the trial. This was not a case of doubtful identification, as where a masked marauder is dimly descried across a misty moor by moonlight. Nevertheless an instruction based upon the above Pennsylvania cases would probably have been given if defendant had requested it. But no such request was made (Tr. 156–60). Defendant is therefore precluded from urging this point now, even if it had merit.

The motion for new trial is denied.