WORTH v. NORTON.

MEMBER OF CONGRESS—CON. U. S.—SUMMONS.—The provisions of art.
    I., sec. 6, of the Constitution of the United States, exempting mem-
    bers of Congress from arrest, does not extend to service of a sum-
    mons in a civil action; but if they did, they would not exempt a
    member from such service while absent on leave from Congress
    while in session, attending to private business.    MR. JUSTICE POPE
    dissents.

Before WATTS, J., Marion, 1898.    Reversed.

Action on note by B. G. Worth and C. W. Worth, survivors of the firm of Worth & Worth, against James Norton. From order setting aside service of summons and complaint, plaintiffs appeal.

*Messrs Wilcox & Wilcox,* for appellants, cite: *On main question:* Art. I., sec. 6, Con. U. S.

*Messrs. Sellers & Sellers,* contra, cite: *On main question:* Art. I., sec. 6, Con. of U. S.; Cons. of S. C. of 1790, 1868, 1895; 4 McC., 152; Rev. Stats., 194, 195, 196. *It is the policy of the law to construe the Constitution in such cases liberally:* 1 Dall., 296, 300; 3 Dall., 478; 2 Strange, 985; 4 McLean Fed. R. Case, No. 8616; 5 Rand., 697; 16 Maine, 132; 1 Wall., Jr., 189.

August 2, 1899.    The opinion of the Court was delivered by

MR. JUSTICE POPE.    Plaintiffs commenced an action against defendant in the Court of Common Pleas for Marion County, in this State, by the service of a summons and complaint upon him while he was at Florence C. H., in Florence County, in this State, on the 6th day of July, 1898, for the recovery of a money judgment.    Thereupon the defendant, by his counsel, served the following notice: "The defendant, James Norton, by his counsel, Sellers & Sellers, without at present answering the complaint herein, alleges: 1. That he is a representative from the Sixth District of the State of South Carolina in the Congress of the United States of America; that, as such, he is not amenable to process, either criminal or civil, except in specified cases, during the session of the said Congress, or in going to or returning from the same.    2. That on the 6th day of July, 1898 (the day on which copy of summons and complaint was served upon him, in the town of Florence, S. C.), the said Congress was in session in the city of Washington, D. C., he being absent therefrom on leave.    Wherefore, you will take notice that

defendant, by his counsel, will move the Court of Common Pleas, at 12 o'clock M., on the first day of the next term thereof for said county, or as soon thereafter as counsel can be heard, to set aside the service of said summons and complaint as being unconstitutional, illegal and void; and failing in that motion, he hereby reserves the right, by leave of the Court, to answer said complaint *nunc pro tunc.*" It was admitted at the hearing that on the 6th day of July, 1898, the time of service of summons and complaint, James Norton, defendant, was a representative in Congress from this State, and at the time of service he was in Florence, S. C., on private business, being absent on leave from Congress, then in session, and that Congress adjourned *sine die* on the 8th day of July, 1898.

The motion being heard, his Honor, the presiding Judge, passed the following order: "The motion made in above case to set aside the service of the summons and complaint, on the grounds set forth in the notice served upon plaintiff's counsel, 25th July, 1898, having been heard, and after argument of counsel, it is ordered, that the service of said summons and complaint be set aside as illegal and void, it being admitted that Congress was in session, and that James Norton was a member thereof, and absent therefrom on leave."

The plaintiffs, through their counsel, gave due notice of appeal and subsequently filed their exceptions, as follows: "It is submitted that his Honor, the Circuit Judge, erred: 1. In dismissing the service of the summons and complaint, and in holding the same to be illegal and void, on the ground that 'Congress was in session, and that James Norton was a member thereof, and absent therefrom on leave.' 2. In not holding that the service of the summons and complaint was legal and valid, because the same was not an arrest, and the defendant was neither in attendance upon Congress nor going to or returning from the same. 3. In not holding that representatives in Congress are privileged solely from arrest, except in treason, felony and breach of the peace, during their attendance upon Congress while in session, and

in going to and returning from the same, and in not holding that a representative in Congress is at all times amenable to the service of a civil process of the character served upon the defendant."

The language of the Federal Constitution is as follows: Art. I., sec. 6: "The senators and representatives shall receive a compensation for their services, to be ascertained by law and paid out of the treasury of the United States. They shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective houses, and in going to and returning from the same; and for any speech or debate in any house they shall not be questioned at any other place." Of course, the question we are called upon to settle depends upon the meaning to be given to the words "privileged from arrest." If we adhere to the literal meaning of the word "arrest," the Circuit Judge was in error. But is such a restricted meaning proper? In the judgment of the writer of this opinion, the words "privileged from arrest," as used in the Federal Constitution, are words of art, meaning freedom from service of any civil process. These are the words of the common law and of the mother country. It is to be regretted that the Supreme Court of the United States has not spoken in regard to the true meaning to be accorded the words "privileged from arrest." In our own State, in the case of *Tillinghast and Arthur* v. *Thomas Carr,* 4 McCord, 152, when the privilege of a member of the House of Representatives of the State of South Carolina was invaded by a summons in a civil proceeding, the Court held that the language of the 14th section of article I. of the State Constitution, which was in these words: "The members of both houses shall be protected in their persons and estates, during their attendance on, going to, and returning from the legislature, and ten days previous to the sitting and ten days after the adjournment of the legislature; but these privileges shall not be extended so as to protect any member who shall be charged with treason, felony or breach of the peace,"

were broad enough to cover the cases, not only of arrest but summons in a civil proceeding. The Court in its reasoning uses this language: "It must be obvious that a member may be much harassed by suits, although his body is not arrested. His mind must, of course, be greatly disturbed and drawn off from his business; besides, it brings upon him a sort of odium which lessens his usefulness. If it be admitted that he may be served with a summons while attending on the legislature, it follows that he may be served with a summons *eundo et redeundo,* and thus he might, by ill natured and malicious creditors, be sued in every district through which he passed, going and returning, and might be required to attend a Court, which might be sitting while the legislature was convened, and thus perhaps an undue advantage taken of him, &c." It must be admitted that the Judge who prepared this opinion (Judge Colcock) did not understand the word "arrest" to be synonymous with the words just quoted from the State Constitution. This was not necessary to the decision of the Court. There are at least two decisions of Courts in other States which have construed the meaning of the word "arrest" in the Federal Constitution, as used in the section of that instrument already quoted herein, to be freedom from a summons in a civil action as well as actual arrest in such an action. The case of *Doty* v. *Strong,* 1 Penney's Wisconsin Reports, 84, was when a delegate in Congress from the territory of Wisconsin had been served with summons in a civil action. He pleaded his privilege as a member of Congress in freedom from arrest and summons in a civil action. The Supreme Court held that as a member of Congress, under the Federal Constitution, he was free not only from actual arrest but also from any summons in a civil action. Here is the language used by Mr. Justice Miller, in delivering the opinion of the Court: "The defendant relied upon the 6th section of the 1st article of the Constitution of the United States, which, in speaking of the senators and representatives in Congress, contains the following language: 'They shall in all cases,

except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective houses, and in going to or returning from the same.' The reason of this provision is obvious. The people elect their representatives to Congress to protect their rights and advance their interests, which should not be jeopardized by the arrest of their representative for debt or private contract of his own, and it is equally necessary that his rights and interests should be protected while absent in the public service. In order to render this provision available to the extent of its necessity, it will not do to construe the words *privilege from arrest* in a confined or literal sense. A liberal construction must be given to these words upon principle and reason. It is just as necessary to the protection of the rights of the people that their representative should be relieved from absenting himself from his public duty during the session of Congress, for the purpose of defending his private suits in Court, as to be exempt from imprisonment on execution. If the people elect an indebted person to represent them, this construction of the Constitution must also be made to protect his rights and interests, although it may operate to the prejudice of his creditors; but the claims of the people upon his personal attendance are paramount to those of individuals, and they must submit. We have only been able to find one authority on this subject, after a careful search. It is a decision of the Supreme Court of Pennsylvania, in the case of *Geyers, lessee,* v. *Irwin,* 4 Dall., 96. That decision was made upon the same provisions in the Constitution of that State, and couched in the same language as that under consideration. The Court in that case declared that 'a member of the General Assembly is undoubtedly privileged from arrest, summons, certiorari, or other civil process during his attendance on the public business confided to him, and that upon principle, his suits cannot be forced to a trial and decision while the session of the legislature continues.' " There has been a more recent case, that of *Miner* v. *Markham,* 28 Federal Reporter,

387, where Judge Dyer of the United States Circuit Court, in construing this same provision of the Federal Constitution, held, that "a member of Congress is entitled to exemption from service of process, although not accompanied with an arrest of the person, while on his way to attend a session of Congress." Although this is only a Circuit opinion, Judge Dyer has done his work in defending the construction of this provision of the Constitution so ably, that we are strongly tempted to quote at length from such an admirable opinion; but we have already quoted quite enough to set forth the principle upon which we rely in sustaining the Circuit judgment of Judge Watts in the case at bar. The decision of this question renders unnecessary any prolonged notice of that ground of appeal which claims that the Circuit Judge overlooked the fact that service of process was made upon Norton in his absence from his seat in Congress, and on two days before the Congress adjourned. Mr. Norton, although absent on leave from his seat in Congress, was liable to be summoned to return to Congress at any moment. Besides, Congress was in session when he was served with process. Public policy as well as the Federal Constitution demand that these gentlemen, who are elected by the people as their representatives in the lower house of Congress, shall not be harassed by civil suits while Congress is in session, and also for a reasonable time in going to and returning from Washington. In my opinion, our judgment should be: "It is the judgment of this Court, that the order of the Circuit Court, which was appealed from, be affirmed." But the majority of the Court think otherwise.

Hence it is my duty to state that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit Court, with leave to the defendant to answer in twenty days after the remittitur reaches the Court below; but that in the event the defendant fails to answer in said twenty days, that the plaintiff have leave to apply to the Court for judgment, but I dissent from this judgment.

MR. CHIEF JUSTICE MCIVER, *dissenting, with whom concur* JUSTICES GARY *and* JONES. Being unable to accept the conclusion reached by Mr. Justice Pope in this case, I will proceed to state briefly the grounds of my dissent. The facts of the case are all conceded, and are so fully and fairly stated in his opinion, as to supersede the necessity of any further statement here. The exception claimed is based entirely upon sec. 6 of art. I. of the Constitution of the United States, the terms of which are set forth in the leading opinion. I do not think that the defendant is entitled to the exemption claimed, for two reasons: 1st. Because it is not pretended that the defendant was arrested, but was simply served with a summons to answer to a civil action brought to recover the amount of an ordinary money demand; and the constitutional provision above referred to confers only the privilege of immunity from *arrest* and not an immunity from suit. 2d. Because it is conceded that the defendant, at the time he was served with the summons, was not in attendance upon the session of the House of Representatives of which he was a member, nor was he going to or returning from the same; but, on the contrary, he was absent on leave from said house, and was at Florence, S. C., attending to his own private business. The question which the Court is called upon to decide turns entirely upon the construction of the language used in the constitutional provision under which the exemption is claimed. The language is that senators and representatives "shall, in all cases, except treason, felony and breach of the peace, be privileged from arrest." It seems to me that this language is so plain as to admit of but one construction. The privilege granted is freedom from "*arrest,*" and that word has such a plain and well defined meaning that there can be no doubt as to the meaning of such a well known word, having such a well defined meaning. There is not a word or syllable in the section of the Constitution, which in the slightest degree indicates an intention that this word shall have any other than its universally accepted signification. No Court, therefore, has any

authority, from its own views of public policy, to stretch that word beyond its usual and accepted signification. It cannot for a moment be supposed that the framers of the Constitution were ignorant of the wide difference between arresting the person of a debtor and simply serving him with a summons to answer to a civil action, which is, practically, nothing more than a mere notice. It would, therefore, be wholly unwarranted for a Court to put such a construction upon the language found in the Constitution as would make the exception conferred apply to two such very different things. It is said in that standard authority, Cooley on Con. Lims. (2d edit.), 58-60: "In interpreting clauses we must presume that *words have been employed in their natural and ordinary meaning.* Says Marshall, C. J., 'The framers of the Constitution and the people who adopted it, must be understood to have employed words in their natural sense, and to have understood what they meant.' This is but saying that no forced or unnatural construction is to be put upon their language; and it seems so obvious a truism, that one expects to see it universally accepted without question; but the attempt is so often made by interested sublety and ingenious refinement to induce the Courts to force upon these instruments a meaning which their framers never held, that it frequently becomes necessary to redeclare this fundamental maxim." So in Potter's Dwarris on Stat. Const., at page 145, we find the same principle laid down in the following language: "Whether Courts are interpreting an agreement between parties, a statute or a Constitution, the thing to seek is *the thought which it expresses.* To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order and grammatical arrangement in which they stand. If thus regarded, the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, that meaning apparent upon the face of the instrument is the one which *alone* we are at liberty to say was intended to be conveyed. In such case there is no room for

construction.   That which the words declare is the meaning of the instrument; and neither the Courts nor the legislature have a right to add to, or take away from, that meaning." See, also, Endlich on Interpretation of Statutes, sections 4, *et seq.,* especially at section 5, where that writer, after saying: "What is called the policy of the government, with reference to any particular legislation, is said to be too unstable a foundation for the construction of a statute," introduces the following quotation from Mr. Justice Story's treatise on the Constitution: "Arguments drawn from impolicy or inconvenience ought here to be of no weight.   The only sound principle is to declare *ita lex scripta est,* to follow and to obey; nor, if a principle so just could be overlooked, could there well be found a more unsafe guide or practice than mere policy and convenience."   While, therefore, it may be supposed that good policy demands that a member of Congress, upon his attendance upon the sessions of the house to which he belongs, should not only be protected from any restraint upon his liberty by the arrest of his person, but also from being harassed by suits or actions, yet I am unable to understand by what authority a Court can add to the terms of the Constitution, so as to add an additional privilege to that conferred in plain terms by the Constitution, whereby a member of Congress may claim a privilege not only exempting his person from arrest but also an exemption from suit. Accordingly, as is said in Cooley on Const. Lim., 133, in some of the States the privilege of members of the legislature of exemption from arrest on civil proceess has, by constitutional provision, been extended so as to exempt members of the legislature from the *service* of civil process as well as from *arrest* of their persons, and in others of the States the estates of the members are exempted from attachment for some prescribed period.   This certainly tends to show that it is considered that, without such additional provision, the privilege from *arrest* cannot be so construed as to include an exemption from suit.   And in a note to the passage to which I have referred, that distinguished author cites

5—56

two cases, *Gentry* v. *Griffith,* 27 Texas, 461, and *Case* v. *Rorabacher,* 15 Mich., 537, as holding that: "Exemption from arrest is not violated by the service of citations or declarations in civil cases."

The only case from our own State cited by Mr. Justice Pope is *Tillinghast & Arthur* v. *Carr,* 4 McC., 152, which, it seems to me, tends to support my view rather than his. In that case, Carr, a member of the legislature, was served with a writ while attending the legislature in Columbia, and he moved to set aside the service of the writ, under the privilege conferred by our Constitution of 1790, which motion was granted. The language of that provision, which is fully set out in the opinion of Mr. Justice Pope, and need not, therefore, be repeated here, is very different from that relied on in this case. The exception there conferred is expressed in this language: "The members of both houses shall be protected *in their persons and estates,* during their attendance," &c. (italics mine), and that language might well be construed as extending the exemption so as to embrace immunity from suit as well as from arrest, for the protection intended applied not only to the *persons* of the members, but also to their *estates,* which, of course, would be affected by a civil suit, as well as where the person of the member was arrested; and hence, when the declared intention was to protect not only the *person* but also the *estate* of the member, the Court was well warranted in construing the constitutional provision as conferring an immunity from the service of any civil process as well as from the arrest of his person in a civil action. This view seems to have been taken by Judge Colcock, who opens his opinion with these words: "In determining this question I must be governed by the words of our Constitution. It will be observed that all cases of privileges are now provided for by some law, and in most of those which have been passed upon that subject, both here and in Great Britain (before the act of Anne), the word arrest is used; and this construction, which has been almost always given to that word, has been, that if the body be not

taken, the privilege is not violated.    There can be no doubt but that the framers of our Constitution were fully apprised of the various opinions upon this subject, and of all the important cases which had occurred in England, and that after a full knowledge of these circumstances, they passed the clause of the Constitution.    Now if the framers of our Constitution meant no more than that the member should be exempt from arrest, why did they not use the word so common on such occasions." This language, it seems to me, plainly indicates that if Judge Colcock had been construing the constitutional provision of the Constitution of the United States upon which the question under consideration turns, in which not only the word "arrest" is used, but, what is more important, no other word implying an intention to extend the exemption beyond the arrest of the person, is found therein, he would have held, as he says it had almost always been held, "that if the body be not taken, the privilege is not violated."    It is true, as Judge Pope frankly admits, that the case just considered is not decisive of the question, yet it does seem to me that the language which I have quoted plainly indicates that Judge Colcock would have sustained my view in this case.    I find, however, another case in our State, which, by analogy, is more in point—*Huntington* v. *Shultz,* Harp., 452.    In that case the question was whether the defendant was exempt from the service of a writ in a civil action while attending Court—the exemption being claimed under the act of 1791, 1 Brev., 226, which provided as follows: "That all persons necessarily going to, attending on or returning from the same (the Superior Courts), shall be freed from arrests in any civil action." *Held,* that the service of a writ in a civil action is not an arrest, within the meaning of the act of 1791, exempting from arrest persons necessarily attending on Courts.

In preparing this opinion, which I have had to do hastily, I have not had any access to the cases cited from Wisconsin, Pennsylvania, and the Federal Reporter, and, therefore, I cannot comment upon them except to say that, judging from

the quotations made from them in the opinion of Mr. Justice Pope, they seem to be based largely upon considerations of public policy and convenience, a line of reasoning, as may be seen above, which is condemned by the standard authors on constitutional law, and the rules for the construction of constitutions. At all events, those cases are not binding authority here.

2d. There is also another reason why I cannot concur in the conclusion reached by Mr. Justice Pope, even if it could be conceded (as I am unwilling to do), that the word "arrest," in the constitutional provision relied upon, could be so construed as to include an exemption from the service of a summons in a civil action, still I do not see how the exemption claimed in this case could be allowed. It will be observed that the privilege conferred is not an exemption from arrest while a member of Congress or during the sessions of that body, as we are told by the books was once the case in regard to members of the British Parliament, but the exemption here is only *during attendance* at the session of the house of which the person claiming the exemption is a member, and in *going to or returning from* the same. Now in this case the conceded facts are that the defendant, when served with a copy of the summons in this case, was neither in attendance on nor was he going to or returning from the house of representatives of which he was a member, but, on the contrary, was in the city of Florence on his *private* business. So that in no view of the case was the defendant entitled to the exemption claimed.

I think, therefore, the order appealed from should be reversed.