### LONG v. ANSELL.
### No. 6008.

Court of Appeals of the District of Columbia.
Argued Oct. 3, 1933.

Decided Feb. 5, 1934.
Modification Denied Feb. 19, 1934.

his official capacity, is exempt from service of civil process in the District of Columbia.

Joseph E. Davies, Adrien F. Busick, and S. W. Richardson, all of Washington, D. C., for appellant.

Burr Tracy Ansell, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

**VAN ORSDEL, Associate Justice.**

This case comes here by special appeal from an order of the court below denying defendant's motion to quash the summons and service issued upon a petition filed by respondent, plaintiff below, charging the defendant with publishing a false and malicious libel.

The publication, it is alleged, purported to be a report of a speech made by the defendant on the floor of the Senate of the United States. It is alleged that the speech itself contained libelous and defamatory statements; and that the defendant caused copies of the Congressional Record containing the speech to be printed and mailed to persons in Louisiana, the District of Columbia, and elsewhere. Accompanying the speech was a letter inviting the recipient to read the printed document.

It is unnecessary for us to consider the contents of the published circular that it is alleged was circulated by the defendant. It is sufficient to say that if the allegations of the petition are supported by sufficient evidence, the matter charged constitutes libel per se. The issue here presented is whether or not a Senator of the United States, while serving in his official capacity, is exempt from service of civil process in the District of Columbia.

Section 6, article 1 of the Constitution, provides as follows: "The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place." Similar language is found in the Constitutions of the several states, and some confusion has arisen among the courts in construing and interpreting these provisions. In some instances it is held that the word "arrest" refers to arrest in certain classes of criminal cases. In other instances it is held that the word "arrest" should be confined to physical arrest in civil cases; and in still other cases it has been held that the word "arrest" has general significance and applies even to the service of civil process.

In the case of Merrick & Durant v. Giddings, 1 MacArthur & M. (11 D. C.) 55, decided in 1879 by the Supreme Court of the District of Columbia, Mr. Justice Wylie, in an able opinion, reviewed at great length the decisions of the early English courts on the subject of the exemption of members of Parliament from arrest, either in criminal proceedings or by service of civil process. Originally the exemption was extended in some cases even to the prevention of the service of summons upon servants and employees of a member of Parliament, on the theory that it might interfere with the service to be rendered by the employee to the member. The extent, however, to which these cases generally held is stated by Lord Chief Justice Denman in Stockdale v. Hansard, 7 C. & P. 737, in which the chief justice said: "The proceedings of Parliament would be liable to continual interruption, at the pleasure of individuals, if everyone who claimed to be a creditor could restrain the liberty of the members. In early times their very horses and servants might require protection from seizure, under legal process, as necessary to secure their own attendance; but when the privilege was strained to the intolerable length of preventing the service of legal process, or the process of a cause once commenced against any member, or of threatening any who should commit the smallest trespass upon a member's land, though in the assertion of a clear right,

as breaches of the privilege of Parliament—these monstrous abuses might have called for the interference of the law, and compelled the courts of justice to take a part."

These early decisions of the English courts, however, were greatly modified or set aside by an act of Parliament, 10th George III, chapter 50, which declared:

"Sec. 1. Any person may at any time, commence and prosecute any action or suit in any court of record, or court of equity, or by admiralty, and in all causes matrimonial and testamentary, against any peer or lord of Parliament of Great Britain, or against any of the knights, citizens, or burgesses, etc., for the time being, or against any of their menial or any other servants, or any other persons entitled to the privilege of Parliament; no such action, suit, or other process or proceeding thereupon, shall at any time be impeached, stayed, or delayed by or under any color, or pretense of any privilege of Parliament.

"Sec. 2. But nothing in this act shall extend to subject the person of any of the knights, citizens, and burgesses, members of the House of Commons for the time being, to be arrested or imprisoned upon any such suit or proceeding."

This act was passed seventeen years before the drafting of our Constitution, and as said in the Merrick Case: "Our Constitution was signed in 1787, and was framed by men who could not have been ignorant of that act of Parliament. It is impossible to believe that they intended that the members of the Congress of the United States should have a greater extent of privilege in this matter, than belonged at that time to the Peers of Great Britain. It is well known that the current of public sentiment in this country, was altogether in the opposite direction at that period of our history. From that day to the present, neither the Senate nor the House of Representatives has ever asserted such a claim in behalf of its members."

Mr. Justice Wylie, in his opinion in the Merrick Case, holding that the constitutional exemption did not extend to the mere service of civil process, reviewed many of the early state cases in this country, in some of which it was held that the constitutional exemption from arrest extended to the service of civil process. This court, however, in the later case of Howard v. Trust Company, 12 App. D. C. 222, rested its decision upon the soundness of the opinion in the Merrick Case as announcing the law of this jurisdiction.

These decisions are in accord with the holding in the case of Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278. In that case the court was considering the application of the exemption to a criminal case. Williamson, a Member of Congress, had been convicted and sentenced in a criminal action for violation of the public land laws. The court, in a most elaborate opinion by Mr. Justice White, reviewed at great length the law on this subject as existing both in England and this country, and reached the conclusion that the language of the constitutional exemption "breach of the peace" referred broadly to all indictable criminal actions, and that the constitutional exemption would not apply to a Member of Congress arrested for an indictable offense. Its application was limited by the court to arrests in aid of civil process.

The constitutional exemption has never been interpreted as a retreat for Congressmen and Senators from arrest for crime. At the time of the adoption of the Constitution there were laws in the states authorizing imprisonment for debt in aid of civil process. Undoubtedly it was to meet this condition that the exemptions in federal and state Constitutions were aimed. The reason for incorporating this provision in the Constitution has largely disappeared. We no longer have imprisonment for debt, except in a few jurisdictions where an absconding debtor may be arrested and imprisoned. The decisions of the courts, therefore, in limiting the exemption merely to arrests in aid of civil process, and in conformity with the practice of legislation on this subject, have greatly limited the scope of the exemption. That which at the time of the adoption of the Constitution was of substantial benefit to a Member of Congress has been reduced almost to a nullity.

This brings us to the consideration of the distinction between "arrest" and the mere service of civil process. It has generally been held that an arrest is synonymous with the actual detention of the person or party arrested and does not mean merely the service of a summons or citation. Huntington v. Shultz, Harp. (16 S. C. Law) 452, 18 Am. Dec. 660; and as said in Hart v. Flynn's Ex'r, 8 Dana (Ky.) 190, 191: "Arrest signifies a restraint of the person, a restriction of the right of locomotion, which cannot be implied in the mere notification or summons or petition or any other service of such process by which any bail is required, nor restraint of personal liberty."

Thus it appears that the word "arrest" has a well-defined meaning. There must be some detention of the person to constitute arrest. This of course would mean any arrest made or detention in a criminal proceeding, or an arrest in a civil case in execution of the command of some court or officer of justice. Legrand v. Bedinger, 4 T. B. Mon. (Ky.) 539, 540; or as said in Baltimore & O. R. Co. v. Strube, 111 Md. 119, 127, 73 A. 697, 700: "An arrest is the seizing of a person and detaining him in the custody of the law." From these authorities it may be concluded, we think, that the term arrest may be applied to any case where a person is taken into custody or restrained of his full liberty, or where the detention of a person in custody is continued for even a short period of time. People v. Erlanger (D. C.) 132 F. 883.

This distinction between "arrest" as used in the Constitution and the mere service of civil process is sustained by many leading state cases. In Worth v. Norton, 56 S. C. 56, 33 S. E. 792, 794, 45 L. R. A. 563, 76 Am. St. Rep. 524, involving the application of the exemption to service of civil process, the court said: "It cannot for a moment be supposed that the framers of the constitution were ignorant of the wide difference between arresting the person of a debtor and simply serving him with a summons to answer to a civil action, which is, practically, nothing more than a mere notice. It would, therefore, be wholly unwarranted for a court to put such a construction upon the language found in the constitution as would make the exception conferred apply to two such very different things." To the same effect are Rhodes v. Walsh, 55 Minn. 542, 57 N. W. 212, 23 L. R. A. 632; Gentry v. Griffith, 27 Tex. 461.

■ Nor is there any merit in the contention that defendant is exempt from service of summons because his presence in the District of Columbia is made necessary in the performance of his official duties. The exemption of suitors and witnesses from service of summons, brought here from a foreign jurisdiction in response to legal process, has no application in the present case. The law which protects suitors and witnesses from the service of legal process grew out of the necessity of the courts themselves to protect the administration of justice from the interference which would necessarily follow if they should be subject to arrest and service of legal process. This privilege has never been extended to Members of Congress while here in the performance of their official duties, and it cannot reasonably be implied from the rule as to suitors and witnesses.

Thus it appears that there is nothing in the present case which could be distorted into a legal arrest or could be brought within the immunity afforded in the Constitution to Members of Congress. It would be an extraordinary situation if Members of Congress, while in Washington, in their official capacity, could incur common indebtedness, such as store bills, hotel bills, etc., and be entirely immune from service of civil process for the enforcement of such claims. This we have held in a number of cases is not the law, and we can perceive no distinction between the service of civil process in a case of that kind and the one which is under consideration in this case.

A Senator of the United States is here charged with publishing in the District of Columbia, and circulating here and throughout the country, libelous and defamatory articles, alleged to be a reprint of a speech made on the floor of the Senate. The charge here is not for slander resulting from a speech made on the floor of the Senate, but for libel in publishing and distributing a copy of that speech, together with a letter calling special attention to the article.

Defendant pitches his defense upon the exemption from arrest, and not upon his exemption from responsibility for statements made in his speech on the floor of the Senate. But were that claim advanced, it would be without force, since the acts charged have only remote connection with the speech. While the published articles were in part reproductions of the speech, the offense consists not in what was said in the Senate, but in the publication and circularizing of the libelous documents.

The order denying the motion to quash is affirmed, with costs.