149 F.Supp. 837 (1957)
UNITED STATES of America
v.
Charles SCOTT.
Crim. No. 218-57.
United States District Court District of Columbia.
February 15, 1957.
*838 Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., for plaintiff.
Carl J. Morano, Washington, D. C., for defendant.
YOUNGDAHL, District Judge.
The police were investigating a robbery which occurred at the Omar Khayyam restaurant. From their study of the circumstances surrounding the crime, the investigating officers had concluded that it was an "inside job". On December 24th they received information from a reliable confidential informant that the defendant was employed at the restaurant and was planning to leave for Florida that afternoon, possibly within the hour, although there was money owed him. They discovered that the defendant had worked at the Omar Khayyam for only five weeks. The officers then *839 looked up the defendant's record and ascertained that he had previously been convicted of several felonies; that he had served a seven-year sentence for a housebreaking in Florida; and that he was on parole as a result of convictions for housebreaking, robbery, and rape.
The officer in charge of the investigation immediately dispatched policemen to the railroad station for the purpose of preventing the defendant from leaving town. He and another officer rushed to the defendant's residence. They were admitted to the apartment building willingly by a woman and directed to the defendant's apartment, where they found the door ajar.
Upon entering the apartment, they saw an open suitcase containing liquor bottles bearing the same stamp number as bottles which had been stolen during the robbery in question. On the defendant's bureau, in plain view, they saw rolls of coins; similar rolls had been taken from the restaurant. One officer remained in the apartment while the officer in charge stationed himself at a second-story window. The defendant approached the building, but seeing another officer in plainclothes about to enter, began to walk away. The officer in charge followed him down the street, established the defendant's identity, identified himself, and brought the defendant back to the apartment. The defendant was then questioned further by the officers. At the conclusion of the questioning, he was searched and a sum of money was taken from his person. The officers then seized the suitcase containing the liquor bottles, seized the rolls of coins from the bureau, and took the defendant to the police station. The defendant has moved to suppress the evidence seized and has requested that the property taken from him be returned.
The basic issue to be determined by the Court is whether the officers' seizure of the suitcase and the rolls of coins is valid, though made without a search warrant  either because of the "exceptional circumstances" which existed at the time or because the seizure was incidental to a lawful arrest. The Court must also determine whether the search of the defendant's person, and the seizure of the sum of money discovered thereby, is lawful.
As the Government relies mainly on the "incident to arrest" theory, the Court will deal first with that aspect of the case. The Government properly concluded that in order to validate the seizure of the suitcase and the rolls of coins it must demonstrate that the arrest did not take place until after the defendant was questioned in his apartment. The Government attempts to prove that an arrest did not take place on the street by demonstrating that no "probable cause" for making an arrest existed at that time. However, the Government's argument fails to persuade for two reasons: First, it does not necessarily follow from the fact that no "probable cause" to make an arrest existed, that no arrest was made. Whether or not an arrest has been made is determined by analyzing the statements and actions of the officers and the individual involved. With regard to this case, such an analysis will be found infra. Second, the Court is convinced from the facts stated supra that probable cause to make an arrest did exist when the officers encountered the defendant on the street.
As the Court has already noted, the Government contends that "probable cause" to arrest the defendant did not exist prior to the entry of the officers into defendant's apartment, and that "probable cause" did not exist even after the discovery of the liquor bottles and rolls of coins. The Government's memorandum states, "There was the possibility that the defendant, even though complainant's employee, had been paid part of his wages in the form of whiskey, innocently obtained rolls of coins similar to those stolen from his employer, and was preparing to travel to see a sick grandmother." This seems to the Court to be a far-fetched proposition  and if it were justifiable, a further question would arise as to the legality of the seizures, for the Court would have some *840 doubts as to the legality of the initial entry into the apartment and might be compelled to suppress the evidence if its seizure constituted "the fruits" of that entry. However, in view of the facts of the case and the other issues involved, the Court feels free to disregard the Government's statement that "probable cause" to arrest the defendant did not exist prior to his return to the apartment in the custody of the officer.
Aside from the question of whether "probable cause" to make an arrest did or did not exist at the time the defendant was returned to his apartment by the police officers, there can be no question but that the defendant was, in fact, arrested on the street. The Government argues that the officer "took custody of the defendant on the sidewalk * * * maintained custody of the defendant and immediately took him to the defendant's apartment." The Government says, however, "Displacement of defendant's person to the apartment" does not indicate that he was arrested prior to his arrival at the apartment. The Government's novel theory of "displacement" is based upon a fundamental misconception of the meaning of the word "arrest". As our Court of Appeals stated in Long v. Ansell, 63 App.D.C. 68, at page 71, 69 F.2d 386, at page 389, 94 A.L.R. 1466, "From these authorities it may be concluded, we think, that the term arrest may be applied to any case where a person is taken into custody or restrained of his full liberty, or where the detention of a person in custody is continued even for a short period of time." Citing this case in Price v. United States, 119 A.2d 718, 719, the Municipal Court of Appeals for the District of Columbia said, "The word `arrest' has a well-defined meaning, the essence of which is a restriction of the right of locomotion or a restraint of the person * * * We doubt that appellants had liberty to take leave of the officer's presence * * *." In this case the Government admits that the officer not only "took custody" but "maintained custody". Accordingly, this Court must find that an "arrest" was made on the sidewalk and not merely a "displacement". See also Morton v. United States, 79 U.S. App.D.C. 329, 144 F.2d 28, certiorari denied 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428. The Court notes that in order to determine that the instant arrest took place on the street, we need only look as far as the testimony of the arresting officer, for though he said he "wouldn't be too sure" whether he actually used the word "arrest" while on the street  in response to the question, "Now did there come a time shortly thereafter that you arrested the defendant out on the sidewalk near the premises", he replied, "I did, sir."
Though it is clear that a search of the defendant's apartment without a warrant would have been lawful had he been arrested there, United States v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 94 L.Ed. 653, the mere fact that a suspect has been arrested elsewhere does not give rise to the right to search his apartment, Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. Nor can a seizure which would not be legal except as "incident to an arrest" be made legal by returning a person already under arrest to his apartment prior to taking him to a police station. Cf. McKnight v. United States, 87 U.S.App. D.C. 151, 183 F.2d 977. That the distance which the defendant was returned is not great in this case seems irrelevant. The Court is not inclined to prescribe an area of yards or blocks surrounding a man's home, and state that he may be arrested anywhere within that area and returned home for the purpose of permitting a search without a warrant. For the purpose of the "incident to arrest" exception to the rule that search warrants are required before homes may be invaded, is to allow officers to search that particular location over which the person arrested has control at the time of the arrest, United States v. Rabinowitz, supra. The purpose is not to create an exception covering the arrested person's residence regardless of where that person is at the time of his arrest. The *841 Court would also like to point out that this is not a case in which the defendant was arrested as he stepped out of his home. In such a case the argument as to control might possibly be stronger. In this case, however, the defendant had not been home for some time and could not by any reasoning be said to have been in control of the premises at the time of his arrest.
The court must now turn to the question of whether the seizure of the suitcase and the rolls of coins can be justified on any grounds other than as incidental to a lawful arrest. Despite the Government's argument to the contrary, it is the Court's view that under the facts stated supra, the officers did have "probable cause" to arrest the defendant prior to entering his apartment, and that under the circumstances they could properly do so without a warrant. In pursuance of the right to arrest without a warrant, police may certainly go to a suspect's home and enter his apartment for the purpose of arresting him, where, as in the instant case, they are admitted to the building lawfully and find his apartment door ajar. Once in the apartment lawfully, they need not "look the other way, or disregard the evidence [their] senses bring [them]", for "mere observation" does not "constitute a `search'". Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476, 478. However, though officers having lawfully entered may observe, that entry does not give them the right to search and seize. The "probable cause" which gives rise to the right to arrest a suspect without a warrant is measured by a far different test than the "exceptional circumstances" which give rise to the right to search his premises without a warrant. Lee v. United States, 1956, 98 U.S. App.D.C. 97, 232 F.2d 354. Therefore, to say that police may arrest an individual without a warrant is not to say that they may invade his apartment for the purpose of making a search without a warrant. In the instant case, unless the officers initially possessed the right to make a search without a warrant, they could not gain the right to search merely by making a lawful entry. The question here, however, is whether the officers could seize property lawfully discovered by observation. It seems clear that the protections of the Fourth Amendment are applicable to unlawful seizures as well as to unlawful searches. "The Fourth Amendment prohibits both unreasonable searches and unreasonable seizures, and its protection extends to both `houses' and `effects.'" United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 95, 96 L.Ed. 59. Therefore, the Court must determine whether, the property having been lawfully discovered, its seizure by the police was "reasonable" under the circumstances.
Searches and seizures without warrants have been the subject of the most scrutinizing judicial analysis. It is not necessary here to trace the development of the law in this field other than to state that searches and seizures without warrants are prohibited except as incident to lawful arrests, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, or under "exceptional circumstances" which necessitate the undertaking of a search before a warrant can be secured, Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. It might also be pointed out that (leaving aside the question of searches of "movable vehicles") the first of these exceptions has proved to be by far the more significant.
In the present case, it seems clear that once the police had lawfully observed the location of the property seized, there was no urgency which required them to seize it without observing judicial procedures. As our Court of Appeals recently said, "`There was no question of violence, no movable vehicle was involved, nor was there an arrest or imminent destruction, removal, or concealment of the property intended to be seized. In fact, the officers admit they could have easily prevented any such destruction or removal by merely guarding the door.'" Lee v. United States, supra [98 U.S.App.D.C.P. 97, 232 F.2d 356]. *842 So, too, another Court of Appeals recently stated in suppressing evidence: "No vehicle is involved and no removal of the contraband was possible, the officers being present and able to place guards at all exits." Walker v. United States, 5 Cir., 225 F.2d 447, 450. Therefore, it cannot be said that the discovery of the property created such an emergency as to make legal an otherwise illegal seizure. In this case, as in Lee and Walker, the facts show that the police could easily have obtained a warrant while protecting the property. In this connection it should be pointed out that even though the police may lawfully discover contraband property while searching for other property described in a search warrant, in the absence of "exceptional circumstances" they may not seize that contraband property under a warrant which does not cover it.[1]
Similarly, there would appear to have been no justification for a search and seizure without a warrant prior to the discovery of the evidence observed in the apartment. For having arrived at the apartment in order to arrest or interrogate the defendant, and finding no one home, any appearance of "exceptional circumstances" which might have existed prior thereto was dissipated. Having discovered the defendant's absence, and being capable of guarding the apartment successfully, the police would not have been justified in searching the apartment without first obtaining a search warrant. Lee v. United States supra, Walker v. United States, supra.
In view of the above, the Court will enter an order granting the motion to suppress as to that property seized which was not taken from the defendant's person, namely, the suitcase with its contents and the rolls of coins. However, the sums of money which were taken from the defendant's person were seized as the result of a lawful search incident to a lawful arrest, and thus the Court will not order that evidence suppressed.
The defendant has moved not only for suppression of the evidence but for return of the seized property. Fed. R.Crim.P. 41(e), 18 U.S.C. states in part, "The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial." From the evidence adduced, the Court believes that the property unlawfully seized is stolen property and thus "subject to lawful detention". For this reason, the Court will not order that said property be returned to the defendant. Instead, the Court will order that it be returned to the custody of the Property Clerk of the District of Columbia without prejudice to the defendant's right to gain possession thereof if he can establish a valid claim thereto pursuant to the procedures governing disposition of property in that officer's custody. See Title 4, D.C.Code, §§ 4-151  4-158.
NOTES
[1] "The requirement of the Fourth Amendment * * * prevents the seizure of one thing under a warrant describing another." (The Constitution of the United States, Analysis and Interpretation, Legislative Reference Service, Library of Congress, Edward S. Corwin, Editor, 1953). "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be done, nothing is left to the discretion of the officer executing the warrant." Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 76, 72 L.Ed. 231.