Kenneth B. LARKIN, Appellant,

v.

UNITED STATES, Appellee.

No. 2175.

Municipal Court of Appeals for the
District of Columbia.

Argued April 28, 1958.

Decided July 25, 1958.

Rehearing Denied Sept. 3, 1958.

James J. Laughlin, Washington, D. C., for appellant.

John W. Warner, Jr., Asst. U. S. Atty., Washington, D. C., with whom Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee. Lewis Carroll, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was convicted by a jury of an indecent assault on a fourteen-year-old boy.[1] Although the testimony in the case contains several conflicting versions of the incident, there was evidence from which the jury could have found that appellant picked up the complainant on the afternoon of September 23, 1956, while he was hitchhiking in the direction of his residence, but instead of taking him home, appellant took him to another house and performed an act of oral sodomy on him against his will.

Many assignments of error are urged on this appeal but only a few require extended discussion. Initially, appellant contends that under the so-called "McNabb-Mallory" rule,[2] the court should have excluded testi-

---

1. Code 1951, 22–504.

2. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

mony relating to certain oral statements made by him to the police and a written confession in which he admitted a homosexual touching of the complainant but supposedly with his consent. The circumstances surrounding the procurement of this evidence were as follows:

After the alleged offense the complainant told his father about it and he in turn notified the police. The matter was referred to a detective assigned to the sex squad. The complainant was able to furnish him with appellant's description, the license number of his car, and a general description of the car, including the fact that it had a radio protruding from the dashboard. Appellant's name was found from the license records, and a few days later, on the evening of October 3, the officer located the car parked in front of a house. He knocked on the door and asked for "Kenneth Larkin." Appellant identified himself, admitted ownership of the automobile, but denied that he gave any boy a ride on the day in question. The officer advised him that he was investigating a complaint and asked him to come down to police headquarters the following morning.

Appellant arrived sometime after 10:00 a. m. and was told by the officer to sit down and wait until the complainant arrived. The officer testified that appellant was not "under arrest" at that time and that he was "free to come and go." "Within an hour" the complainant arrived and identified appellant as his assailant. Appellant denied ever having seen him. The boy then repeated the details of the offense and the officer noted the time as 10:55 a. m. When he finished, appellant immediately made an incriminating oral admission. The officer then placed him under arrest at 11:00 a. m. Appellant was told that if he "cared" to make a statement giving his version he could do so, but that it would be used against him. Appellant agreed. A typist was procured and appellant began dictating a statement at 11:55 a. m. which concluded at 12:40 p. m. No further interrogation took place, and appellant was arraigned shortly thereafter. The exact time was not known, but it was agreed that the arraignment was prior to 2:30 p. m. of the same day.

At trial appellant repudiated the oral admissions and claimed that he signed the written confession because he had been promised his freedom if he did so. He testified that he did pick up the boy on the day in question and take him to a house for a short interval, but he denied that he touched him in any way.

Before deciding whether the oral admissions and written confession were inadmissible under the "McNabb-Mallory" rule, we shall first consider whether the rule is applicable in the Municipal Court. The Mallory decision is an application of Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which provides in substance that whenever a person is arrested, he must be taken before a committing officer "without unnecessary delay * * *." Briefly, the Mallory rule excludes from evidence a confession elicited during a period of illegal detention or delay between arrest and arraignment.

■ Our difficulty arises from the fact that the Federal Rules of Criminal Procedure do not apply to proceedings in the Municipal Court in which the judges try misdemeanors,[3] although they do govern proceedings in which the judges act as committing magistrates.[4] Further, the Municipal Court has not adopted any rule similar to Rule 5(a) of the Federal Rules.

3. Rule 54(a) (1), Federal Rules of Criminal Procedure; see Notes of the Advisory Committee on Rules, note 3 to Subdivision (a) (2) of Rule 54.

4. Rule 54(a) (2), Federal Rules of Criminal Procedure; see Rule 13, Rules of the Municipal Court, Criminal Division; see also, the note of the Advisory Committee on Rules, referred to in footnote 3.

However, long before the advent of Rule 5(a), police officers here have been required by Code 1951, § 4-140, to convey persons arrested without a warrant under specified circumstances "immediately, and without delay," before a magistrate. In Hayes v. District of Columbia, D.C.Mun. App.1943, 34 A.2d 709, 710, decided shortly after the McNabb case, we held that the McNabb rule of exclusion [5] applied in the Municipal Court in view of our Code requirement because

> "* * * [T]he statutes, referred to in the McNabb case, requiring an accused to be taken promptly before a committing officer, were enacted by Congress, the same legislative body that enacted our Code section. We must assume the Congressional intention in both instances was the same, especially since the Code section makes no distinction between the types of offense for which arrest is made." [6]

■ The cited Code section is still in effect and consequently we adhere to our decision in the Hayes case. We hold, therefore, that the Mallory doctrine is applicable to proceedings in the Municipal Court, just as the McNabb rule, its predecessor, was.

■ In the instant case, then, the question before us is whether appellant's oral admissions and confession were obtained during a period of illegal delay between arrest and arraignment in which he was detained "for the purpose of interrogation looking to the extraction of 'damaging statements' to support his arrest." [7] The resolution of this problem depends to some extent on when appellant's arrest or detention actually commenced. Certainly no formal arrest took place until 11:00 a. m. on the morning of October 4 after appellant had made the initial oral admissions. If his detention is regarded as just beginning at that point, testimony about the oral admissions is clearly admissible since they were made at a time when he was not in police custody at all. Further, the period of time from the formal arrest at 11:00 a. m. to the conclusion of the dictation of the written confession at 12:40 p. m. was simply used to reduce the oral statements to written form, a permissible procedure and a legitimate "delay." [8] Any delay in arraignment after the confession is, of course, immaterial and could have no retroactive effect on its validity,[9] but we note that arraignment here seems to have followed with reasonable promptness.

■■ Although, as we have indicated, the formal arrest did not occur until 11:00 a. m., appellant in his brief seems to be contending that detention actually began at the time he entered the police station at 10:00 a. m. In the light of the police officer's testimony that appellant was free at that time to come and go, this contention is not convincing.[10] Even giving

---

5. McNabb, the forerunner of Mallory, was an application of a federal statute.

6. 34 A.2d at page 710.

7. Trilling v. United States, D.C.Cir., 260 F.2d 677; these tests represent the views of a majority of the Court and thus describe the present status of the law on the subject in this jurisdiction. See Blackney v. United States, D.C.Cir., 257 F.2d 191. We are, of course, bound by this interpretation of Mallory. But, see Porter v. United States, D.C.Cir., 258 F.2d 685.

8. Metoyer v. United States, 1957, 102 U.S.App.D.C. 62, 250 F.2d 30.

9. United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140.

10. An arrest "is a restriction of the right of locomotion or a restraint of the person." Price v. United States, D.C.Mun. App.1956, 119 A.2d 718, 719. "* * * the term arrest may be applied to any case where a person is taken into custody or restrained of his full liberty, or where the detention of a person in custody is continued for even a short period of time." Long v. Ansell, 1934, 63 App. D.C. 68, 71, 69 F.2d 386, 389.

**104**

appellant the benefit of the doubt, we do not think the delay from 10:00 a. m. to 11:00 a. m., when the oral admissions were made, was unreasonable. No interrogation took place during this period. In fact, the parties were awaiting the arrival of the complaining witness so that an identification could be made.[11] Immediately upon being confronted with the complainant's version of the incident, and without any extended interrogation, appellant "promptly and spontaneously"[12] made damaging oral admissions. We do not think there was any error in admitting testimony about appellant's oral statements or his written confession.

■■ Another error alleged is the refusal of the trial judge to force production of the Juvenile Court records of the complainant. When the court requested the attorney for appellant to state the purpose of the production of these records, he replied, " * * * one reason why he is in the National Training School. What is his criminal record." Obviously, such records were clearly inadmissible as evidence against the boy,[13] and thus the refusal in this instance was proper. For the first time appellant contends in his brief that the record would show that the complainant had made similar accusations against other persons. If he had any basis for this claim, he should have made it known to the trial court. It is now too late to make such a claim in this court.

■ ■ Appellant claims that the judge displayed bias against him, but the record before us does not afford any basis for such a charge. Appellant points to an alleged verbal exchange between his counsel and the court which is not contained in the record. The judge denied that the conversation ever occurred. Appellant's counsel has filed an affidavit setting forth his version of the facts, but obviously we are in no position to determine whether the incident did or did not take place. Considering the case as a whole, on the basis of what records are properly before us, we are quite satisfied that appellant was given a fair and impartial trial.

■ Appellant also unsuccessfully moved to have the complainant and a supporting witness for the prosecution subjected to a lie detector test. Such evidence is inadmissible[14] and thus appellant could have no rights in the matter. We are urged to overturn this settled rule, but even assuming we have such a power, we are not so inclined.

■ One other assignment of error requires discussion. Several character witnesses were called and testified in appellant's behalf. At the conclusion of the direct examination of each witness, the prosecutor asked that he be permitted to reserve his right to cross-examine until later in the case without giving any reason for his request. In each instance he was accorded this privilege. While we do not believe this procedure constitutes reversible error in this case, it would have been a far better practice to have denied these requests. Generally, cross-examination can only be postponed for a strong reason, and none whatever was offered here.

Other errors alleged are without merit.

Affirmed.

11. Cf. Metoyer v. United States, supra, note 8, 250 F.2d at page 32.

12. Upshaw v. United States, 1948, 335 U.S. 410, 413, 69 S.Ct. 170, 171, 93 L. Ed. 100, explaining United States v. Mitchell, supra, note 9.

13. Code 1951, 11–915. See Thomas v. United States, 1941, 74 App.D.C. 167, 169–171, 121 F.2d 905, 907–909.

14. Frye v. United States, 1923, 54 App. D.C. 46, 293 F. 1013; see, also, Tyler v. United States, 1951, 90 U.S.App.D.C. 2, 9, 193 F.2d 24, 31.