**UNITED STATES of America**
v.
**Paul D. WILLIS.**
**Crim. No. 661–65.**

United States District Court
District of Columbia.

Dec. 7, 1965.

Donald S. Smith, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Jean Dwyer, Washington, D. C., for defendant.

GASCH, District Judge.

This cause came on for hearing on the defendant's motion to suppress certain evidence seized by the police on the occasion of his being taken into custody on or about the 24th day of April, 1965. In support of defendant's motion to sup-

press, defendant's mother, Mrs. Mary Laney, whose address is 640 Hobart Place, N. W., where she then resided, was called as a witness. She testified that about five or six o'clock in the morning she answered her door as the result of a knock. The person who knocked identified himself as Lieutenant Denny of the 12th Police Precinct. He stated he wanted to talk to her son, the defendant Paul Willis. The officer did not have a warrant but was admitted voluntarily "because he was a policeman." She said her son was upstairs; she called him and he came down. The officer asked Willis if he had a police badge. He said he did not. The officer asked if it would be all right for him to go upstairs with Paul and asked her to go up with them. She said it was all right for him to go up, but that she did not wish to go because she was "shook up." She testified further that the officer upon learning that Paul was 17 years of age directed her to bring Paul down to Police Headquarters later that morning. On cross-examination, Mrs. Laney testified that the police asked if Paul Willis lived there, and that she invited him in because he was a policeman. When she called her son, he came down wearing a pair of pants over his pajamas. She did not go up to Paul's room with him and the police officer. She said the policeman was friendly, and she had no complaints about his conduct.

Lieutenant Denny was called as a witness by the Government. He testified that a rape and robbery had been committed in Kenilworth on the night of April 23rd, 1965, and that Paul Willis had been identified as the person involved by the complaining witness; that his purpose in going to 640 Hobart Place, N. W., where Paul lived, was to make an arrest. He further testified that upon stating his purpose and identifying himself as a policeman, he was invited in. He intended to arrest the defendant and was looking for a certain police badge alleged to have been used by the defendant in connection with his activities the previous night and a key. He went upstairs with Paul. He saw a pair of trousers on

the floor by Paul's bed. In going through these trousers, he found a key which was also sought by him as the "fruits of crime." It was said to have been taken from the complaining witness when she was allegedly robbed and raped by the defendant. Subsequently, having learned that Paul was 17 years old, he released Paul to the custody of his mother and asked that she bring him to Police Headquarters, which was done. The only search the Lieutenant made was of the pair of pants found on the floor in Paul's bedroom.

On these facts, the following questions are presented: First, was the entry into Mrs. Laney's home without a warrant lawful? Second, was there an arrest? Third, was the seizure of the key incident to a lawful arrest?

■ As to the first question—whether the entry into Mrs. Laney's home was lawful—Judd v. United States, 89 U.S. App.D.C. 64, 66, 190 F.2d 649, 651; Gatlin v. United States, 117 U.S.App. D.C. 123, 326 F.2d 666, 673; and Greenwell v. United States, 119 U.S.App.D.C. 43, 48, 336 F.2d 962, 967, establish the proposition that

" * * * [S]uch a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied."

The testimony of Mrs. Laney that she invited Lieutenant Denny in *because* he was a police officer is susceptible of the implication of coercion. However, even if the Court were to find that there is an absence of consent under the Judd doctrine, we should examine these facts in the light of Chappel v. United States, 119 U.S.App.D.C. 356, 342 F.2d 935. In Chappel, the police were seeking two men who had committed a robbery and who were believed to be in the apartment in question. The householder denied that she invited the police in or gave them permission to enter. The Court of Appeals sustained the legality of police action and the subsequent arrest of Chappel, who was found in the apartment. The Court said at page 358 of 119 U.S. App.D.C., at page 937 of 342 F.2d:

"If the circumstances shown by this record would have justified a forcible entry after police identity and purpose were made known to the occupant who responded to police knocking, a fortiori their non-forcible entry would be lawful with or without consent. Hence we need not reach the disputed issue whether Miss Gainey did give a knowing and voluntary consent to police entry. See Washington v. United States, 105 U.S.App.D.C. 58, 60, 263 F.2d 742, 744 (1959); Ellison v. United States, 93 U.S.App.D.C. 1, 3 & n. 5, 206 F.2d 476, 479 & n. 5 (1953)." [1]

■ It is undisputed that Lieutenant Denny identified himself as a policeman, stated his purpose, and had probable cause to arrest the defendant for the serious charges of rape and robbery. Only a few hours had elapsed since the offenses were alleged to have been committed.

■■ The second question is whether there was an arrest of the defendant. The testimony of Lieutenant Denny was that he arrested the defendant,[2] but upon

---

1. The Court further observed:
   "In ruling on the motion to suppress, no finding was made on the claim that the occupant gave no valid consent to police entry. See Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951) (for criteria in assessing consented entry)."
   119 U.S.App.D.C. at 358, n. 3, 342 F.2d at 937, n. 3.

2. The Lieutenant did not state that he formally placed defendant under arrest.

From his testimony, however, it is clear that the defendant was not free to depart had he decided to do so. He was told to accompany the Lieutenant upstairs to his bedroom. See Long v. Ansell, 63 App.D.C. 68, 71, 69 F.2d 386, 389, 94 A.L.R. 1466, wherein the Court said:
   "From these authorities it may be concluded, we think, that the term arrest may be applied to any case where a person is taken into custody or restrained of his full liberty, or where the deten-

learning that the defendant was a juvenile, released the defendant to the custody of his mother on the understanding she would bring him to Police Headquarters in accordance with § 11–912 of the D.C.Code, which requires this procedure.

The third question is whether the seizure of the key taken from the pants' pocket of the defendant, which was said to be the house key of the victim of the rape and robbery, was lawful. Searches incident to a lawful arrest are legal and proper provided they are contemporaneous with the arrest and pertain to the "fruits of crime." See Agnello v. United States, 269 U.S. 20, at page 30, 46 S.Ct. 4, at page 5, 70 L.Ed. 145, wherein the Supreme Court said:

> "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things *connected with the crime as its fruits* or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted. See Carroll v. United States, 267 U.S. 132, 158 [45 S.Ct. 280, 69 L.Ed. 543]; Weeks v. United States, 232 U.S. 383, 392 [34 S.Ct. 341, 58 L.Ed. 652]. (Emphasis supplied.)

Here, there was no general exploratory search, but only an effort to ascertain if the key was in the pants' pocket of the defendant. It was shown that the pants in which the key was found were alongside the defendant's bed in the room in which he slept. See Harris v. United States, 331 U.S. 145, 152, 67 S.Ct. 1098, 91 L.Ed. 1399. The defendant relies on the case of Whitley v. United States, 99 U.S.App.D.C. 159, 160, 237 F.2d 787, in an effort to show that this seizure was unlawful and, therefore, should be suppressed. The Court's own words in

tion of a person in custody is continued for even a short period of time." And see Morton v. United States, 79 U.S. App.D.C. 329, 331, 147 F.2d 28, 30, Foot-

Whitley distinguish that case from the instant case:

> "Since the room in which the appellant was arrested was separated by a corridor and a locked door from the room that was searched, it is not clear that the search and seizure were incidental to her arrest. Even if they were incidental, the arrest did not justify the search and seizure, for there was no proof that the arrest was legal."

The motion to suppress is denied.

note 7. This under the particular circumstances of this case constitutes a valid arrest.