Burnice JACKSON, Appellant,

v.

UNITED STATES, Appellee.

No. 2230.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 28, 1958.

Decided Dec. 12, 1958.

Rehearing Denied Jan. 14, 1959.

**578**

Curtis P. Mitchell, Washington, D. C., with whom Roy M. Ellis, Washington, D. C., was on the brief, for appellant.

Charles W. Halleck, Asst. U. S. Atty., with whom Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee. Jack Marshall Stark, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was convicted by a jury of petit larceny.[1] On appeal he contends (1) that the evidence was insufficient to support the verdict; (2) that the court erred in denying his motion to suppress items of evidence on the ground that they were obtained as the result of a search incident to an illegal arrest; and (3) that the court should have excluded certain exhibits as irrelevant. The facts were these:

■ Appellant was employed by a local pharmacy for about a week in January 1958. On January 7 he reported to work between 5:00 and 6:00 p. m. and was told that he had been discharged. Hoping to be able to collect his salary, he remained on the premises until about 7:00 p. m.

Meanwhile, between 6:00 and 6:30 p. m., a clerk in the cigar department placed his cash register tray containing $50 in the store safe and set the dial on "day lock." It was explained that "day lock" meant that it was necessary only to turn the dial from "10" to "0" in order to open the safe. Before so disposing of the tray, however, he made a written list of the serial numbers of the 25 one-dollar bills in the tray, because he wished to compare them with the serial numbers broadcast over a local radio station, which was offering cash prizes for certain bills.

At about 7:00 p. m. appellant was observed going to the lavatory, which was located near the safe. Thereafter he left the store. At 10:00 p. m. one of the owners went to the safe and found that it was no longer on "day lock." Upon opening it, he discovered that the cash tray with the $50 was missing, and notified the police.

The next day a detective assigned to the case telephoned appellant and arranged to see him that evening in a poolroom. Upon meeting him outside the poolroom, the officer stated that it would be cold in his car and suggested that they go to the precinct for their discussion. Appellant agreed. According to the officer's testimony appellant was not under arrest at this time.

The officer further stated that at the station house he asked to see any money appellant had on his person. Appellant

1. Code 1951, § 22–2202 (Supp. VI).

produced a one-dollar bill. The serial number on it corresponded to one of the numbers on the list made up by the cigar clerk. Appellant was then placed under arrest. Subsequently, the officer returned to the poolroom and, with the permission of the night manager, he examined the bills in the cash register. Two of the one-dollar bills it contained were found to have serial numbers identical with the numbers on the cigar clerk's list. These bills were admitted into evidence. The poolroom manager testified that appellant had been playing pool there earlier, and that he had changed a dollar bill for appellant.

Appellant's version of the events at the precinct was that after he arrived there, he was told to put all his personal property on a table, which he did. He was then sent from the room. When he returned, he saw a dollar bill lying on the table and was informed that it had come from his wallet, and that its serial number matched one of the numbers on the cigar clerk's list. He testified that he did not know whether it was his dollar bill or not.

■ Appellant's initial assignment of error, that the evidence was insufficient to support the verdict, need not detain us long. It is a well-known rule that unexplained, exclusive possession of stolen goods shortly after the commission of the crime is sufficient to warrant the inference of the possessor's guilt.[2] Viewing the evidence most favorably to the government, we find that appellant had on his person a one-dollar bill specifically identified as part of the stolen currency within twenty-four hours after the larceny. He gave no explanation for his possession; in fact, it appears that he denied possession. Additionally, there was evidence indicating both motive and opportunity. We think the jury's verdict was well justified.

Secondly, appellant argues that the one-dollar bill was obtained from him while he was under an arrest which was illegal because it was made without any probable cause, and consequently it should have been suppressed from evidence. The government contends (1) that appellant was without standing to challenge the evidence because he made no express, affirmative assertion that the bill was taken from his possession, and (2) in any event, appellant was not under arrest when he exhibited the bill. We believe both of the government's positions are well taken.

■■ It is uniformly held by the federal courts that a claim of ownership or possession of the property seized is required from the defendant before he will be permitted to contest its admissibility on the ground that it was obtained in violation of his constitutional right to be free from an unreasonable search and seizure.[3] In the instant case, while the government's evidence indicated possession in appellant, he made no specific assertion of possession, but instead sought to defend apparently on the theory that the bill had been "planted" on him. Therefore he lacked standing. Assuming the truth of appellant's version of what occurred at the precinct and his statement that he did not know, because he had no way of knowing definitely, whether the bill was his, we agree that this fact made his dilemma even more difficult than the usual case. But we cannot hold that this circumstance is such as to justify an exception here, for the rule is inflexible in denying any standing to those who do not make a claim that their personal rights have been transgressed.

■ Alternatively, we are also of the opinion that the government's evidence discloses no violation of appellant's constitu-

2. Gilbert v. United States, 1954, 94 U.S. App.D.C. 321, 215 F.2d 334, and cases cited therein.

3. Accardo v. United States, 101 U.S.App. D.C. 162, 247 F.2d 568, certiorari denied 1957, 355 U.S. 898, 78 S.Ct. 273, 2 L.Ed.2d 195, and cases cited therein; Connolly v. Medalie, 2 Cir., 1932, 58 F.2d 629, 630.

tional rights. It is true that if appellant was actually under arrest at the time the dollar bill was obtained, such an arrest and incidental search would have been illegal because there was no probable cause to connect appellant with the larceny at that time. However, the officer testified that he did not place appellant under arrest until after he had examined the bill offered by appellant, and we can perceive nothing in the record which would compel us to hold that appellant was under arrest prior to that time. The officer's evidence does not reveal that appellant made any protest or refusal to his suggestion that they go to the precinct for their discussion and appellant himself does not so testify. As far as we can determine from either the officer's or appellant's version of the incidents in question, appellant's trip to the precinct in the company of the detective and his production of the one-dollar bill were voluntary and without compulsion of any sort.[4] We hold that this evidence was properly admitted.

■ Finally, appellant attacks the introduction into evidence of the two one-dollar bills taken from the poolroom cash register on the ground that they were not directly shown to have been his, and therefore they should have been excluded as irrelevant. It is conceded that the bills were not directly connected with appellant, and standing alone, they would not be sufficient to support a conviction. But this fact does not render them inadmissible. The bills were found in a cash register where appellant had just recently made change and thus had some probative force. Considered against the background of all the other evidence in the case, and especially the highly damaging testimony that appellant had in his wallet part of the stolen currency, we cannot say that the trial judge's ruling on this point constituted an abuse of his discretion.[5]

Affirmed.

---

4. See Larkin v. United States, D.C.Mun. App.1958, 144 A.2d 100, 103.

5. Cf. Ketchum v. United States, 5 Cir., 1958, 259 F.2d 434, 436–437.